## GARLINGTON v. COPELAND.

1. Findings of fact by the Circuit Judge, differing from the findings of the master, approved.

2. There being no agreement as to the amount of rent or as to its payment, interest is not chargeable on the items of rent fixed by the decree of the court.

3. Defendant in possession of land is not liable to plaintiffs for rent for years in which he did not and could not collect rents, because of their seizure by the sheriff under agricultural lien warrants issued at the instance of plaintiffs.

4. Parties cannot maintain an action to recover rents and profits of land unless they hold title to the land at the time they instituted their action, or are then the assignees of such rents and profits.

5. The lands of A, deceased, were purchased by B, who transferred his bid to C, who took possession in 1864, but received no deed. C died and devised the land to D. In 1868, the executor of A brought action for its recovery against D, who, under that proceeding, surrendered possession to this executor in 1876. *Held*, that C and his devisee D had no legal title to this land, nor any rights by adverse possession, as the surrender in 1876 was an abandonment of any claim to adverse holding since the commencement of the action in 1868. Therefore C, and D, and those claiming the land under them, had no right to the rents of this land.

6. Where one takes possession of land under a contract to purchase, he

is not entitled to claim an equitable title until he has paid the purchase money.

7. Land was sold under a decree of court in 1863 on a credit. The purchaser deposited Confederate treasury bills with the officer of the court to be applied to the instalments as they fell due. *Held*, that the purchase money was not paid or tendered, as the officer had no right to receive payment by anticipation, and there was no proof that these bills had been applied as directed, or that they had produced payment.

8. No title is acquired by a tax sale which was not conducted as required by law, and where no deed was delivered.

9. This court will not interfere with the discretion of the Circuit Judge in refusing to permit a plea of the statute of limitations by amendment after the case has been heard at length on its merits.

10. Where a party pays off a tax encumbrance on land and goes into possession by agreement with the owners, for the purpose of reimbursing himself, he is entitled, when called to account for rents, to credit for his first payment and for all after payments of taxes, and for the value added to the land by his permanent improvements, without any interest charge on either side.

11. Lands in possession of A being claimed by B and C, a compromise of an action by B against A and C, whereby all claim of B to rents is settled, does not bar an action by C against A for the rents of the same period.

12. After a Circuit Court has adjourned and a decree has been filed, the Circuit Judge (even if still in the same Circuit) has no power to amend his decree.


Before HUDSON, J., Laurens, March, 1889.


In this case, the Chief Justice, having been of counsel for some of the parties in the cause, declined to sit. The appeal was argued before the two Associate Justices in May, 1889. In November, 1889, they filed an order directing a reargument. The Hon. J. J. Norton was then appointed to sit in the place made vacant by reason of the disqualification of the Chief Justice, and reargument was had before the court thus made full on January 9, 1890.

This was an action by Mary Y. Garlington and George F. Young against George P. Copeland for the recovery of land and for rents, commenced prior to February, 1885. Pending this action, under a decree in another cause previously instituted, the land in controversy was conveyed to the plaintiff here, and there-

after the contest was only as to rents while this defendant was in possession.    The opinion states the case.

*Messrs. Ferguson & Featherstone*, for plaintiffs.

*Messrs. Haskell & Dial*, for defendant.

January 28, 1890.    The opinion of the court was delivered by MR. JUSTICE NORTON.'    Under proceedings for the partition of the real estate of one W. R. Young, who died in 1863, instituted in the former Court of Equity, a tract of land containing 550 acres, originally known as the "Duncan tract," but subsequently designated in the litigation between these parties as the "W. R. Young tract," was bid off by one Dean, who, refusing to comply with the terms of the sale, transferred his bid to Campbell, the commissioner in equity, who made the sale, who in turn transferred this bid to one Samuel Young, who went into possession probably about January 1, 1864, and so continued until his death in 1865.    He, however, did not comply with the terms of sale by giving the bond required, but deposited with Campbell the amount of the bid in Confederate treasury notes, and Campbell gave his own bond, with sureties, to himself as commissioner in equity, and no title was ever made to Samuel Young.    By his will, said Samuel Young gave his entire estate to his son. Wm. Young, charged with the payment of legacies to each of the plaintiffs herein.    Wm. Young took possession of the real estate devised to him, including the W. R. Young tract above referred to, in April, 1865, and continued in possession of that tract until January 1, 1876, when he surrendered it to the defendant, Copeland, and it continued in his possession until January 1, 1885.

We understand the circumstances of this surrender to have been as follows, viz.: On April 20, 1868, the defendant Copeland, as administrator with the will annexed (though in another part of the record he is designated as executor), and as next friend of the children of W. R. Young, deceased, (minors) filed a bill in equity against Margaret L. Young, the widow of W. R. Young, B. R. Campbell, and Wm. Young, claiming that the sale of the W. R. Young tract of land to Campbell, as commissioner

in equity, was void, and that the land still belonged to the estate
of his testator, W. R. Young, and was subject to the payment of
his debts or to partition amongst his heirs.    To this bill Wm.
Young answered, claiming that said tract of right belonged to his
testator, Samuel Young, who, he alleged, had paid the purchase
money and was entitled to receive titles from the then commis-
sioner in equity.    This case, however, seems never to have come
to a hearing, and no decree was ever rendered therein.    Much
valuable land in Laurens County was advertised to be sold for
taxes in May, 1875, as the estate of Samuel Young, deceased,
embracing the W. R. Young tract.    Before the sale and prior to
Wm. Young's conveyance to the plaintiffs hereinafter mentioned,
Wm. Young and the plaintiff, George F. Young, agreed that if
defendant Copeland would bid off the lands so advertised for sale
and pay the arrears of taxes thereon, and lend George F. Young
money to redeem other valuable lands sold for taxes the previous
year and discontinue his suit in equity, that he should have the
W. R. Young tract for the estate of W. R. Young, possession to
begin on January 1, 1876 (Judge Hudson finds that he took pos-
session "not as a trespasser, but peaceably." "Did not promise
nor admit his liabiality to pay rent." "And is not to be dealt
with harshly," negativing entry by fraud); and further, that
George F. Young would repay the moneys paid for all the other
lands.    Copeland complied with his stipulations, and possession
of the W. R. Young tract was surrendered to him as had been
agreed, although there had been irregularities in the sale and
survey which prevented the auditor from giving a deed to the
Laurens land, embracing the W. R. Young tract; and although,
as testified to, defendant Copeland had announced that he was
bidding for the benefit of the minor, George F. Young, doubt-
less he thought the carrying out of the agreement was for the
benefit of George F. Young.    The lands to be sold and redeemed
as aforesaid were those of which Wm. Young took possession
under his father's will.    Subsequent to the surrender, to wit, on
April 7, 1876, he made a deed for these lands and certain per-
sonalty to the plaintiffs in settlement of their legacies from Sam-
uel Young.

It further appears that on November 23, 1883, an action was

commenced by the clerk of the court, presumably as successor of the former commissioner in equity, for the use of the heirs of W. R. Young, for the purpose of enforcing the payment of the bond of Campbell, and for a sale of the W. R. Young tract under the statutory mortgage, we presume. To this action both the plaintiffs and the defendant herein were made parties defendant. The plaintiffs herein answered, contesting the claim set up; but the defendant, Copeland, did not appear or answer. This action resulted in a compromise, whereby it was agreed that upon the payment by the plaintiffs herein of a specified sum of money to the heirs of W. R. Young, the master should be ordered to make a deed to these plaintiffs for the W. R. Young tract, and that the sum so specified should be in full satisfaction of the bond, as well as for any claim for rents of said tract which the heirs of W. R. Young might have. The terms of this compromise having been incorporated in a decree of the court rendered on October 10, 1885, and the amount of money therein specified having been paid, the master, on October 13, 1885, made a deed for the W. R. Young tract to the plaintiffs herein.

The foregoing statement, which presents a mere outline of the somewhat complicated transactions which have given rise to the present controversy, seems necessary for a proper understanding of the case now presented.

By this action, which was commenced on November 10, 1884, the plaintiffs demand judgment that the tax sale, under which defendant claims to have bought the W. R. Young tract of land, be declared void, and the certificate of sale issued to him be cancelled; that the defendant account for the rents and profits of said tract of land during the time it was in his possession; and that defendant be enjoined from enforcing the judgment mentioned in the complaint, heretofore recovered by him against the plaintiff, Geo. F. Young.

The defendant answered, denying the claim of the plaintiffs to the rents and profits of the W. R. Young tract, but claiming that he went into possession of that tract for the benefit of the heirs at law of W. R. Young, who, he claims, are the legal owners of the same, the sale to Campbell while commissioner being void, and its terms never having been complied with. He also alleges

that this tract, together with other lands which did belong to the estate of Samuel Young, were offered for sale for taxes, and bid off by defendant, who advanced the money necessary to pay the taxes in arrear, and did thereafter, in pursuance of an agreement with the plaintiff, George F. Young, allow him and the other plaintiff to enter into possession of all the land so bid off by defendant, except the W. R. Young tract, which was the subject of the action then pending to set aside the sale thereof under the proceedings for partition, and in consideration of the advance by the defendant of the money necessary to redeem the lands properly belonging to the estate of Samuel Young, defendant was allowed peaceably to take possession of the W. R. Young tract for the benefit of the heirs of W. R. Young, and has ever since retained possession of the same, but has been so much interfered with by plaintiffs that the possession has been of little value to him, and the property has yielded but little, if anything, more than enough to pay the taxes and other necessary expenses in maintaining the same.

In his amended answer defendant alleges that his purpose in taking possession of this tract was, first to remunerate himself for the amount advanced to redeem the same, together with the current taxes and expenses, and then to turn over the land to the heirs of W. R. Young, but that the rents received have not been sufficient for that purpose, and he sets out the amounts thus advanced and paid by him, and asks that in case he be required to account to plaintiffs for the rents and profits of the W. R. Young tract, that he be allowed credit in such accounting for the amount originally advanced by him to redeem that tract at the tax sale, as well as all amounts since paid by him for taxes on the same and other necessary expenses.

By consent, the issues of law and fact were referred to the master for determination, who made a report finding the facts substantially as stated in the commencement of this opinion, and finding as matter of law that defendant was liable to account for rents and profits during the time he had possession of the land, he fixed the rents at two hundred and forty dollars per year for the nine years during which he had possession, to wit, from 1st of January, 1876, to the 1st of January, 1885, with interest on

each year's rent from the end of the year in which it accrued, amounting to $3,173.04, for which sum he recommended that the plaintiffs have judgment. To this report defendant excepted, and the same, without being heard on its merits. was recommitted for further testimony. After the report was recommitted, the defendant moved to amend his answer, by pleading the statute of limitations, and in certain other respects which need not be mentioned here, as they appear in the statement of the amended answer hereinbefore made. The master refused to allow the amendment, so far as the statute of limitations was concerned. but allowed the other amendment asked for. The master subsequently made a second report, in which he made no change in his former findings, except that defendant should not be charged with rents for the years 1881 and 1882, because the crops for those years were seized by the sheriff under agricultural lien warrants, issued at the instance of plaintiffs, and the proceeds of the sales thereof, or at least a part thereof, were then in the hands of the sheriff. He therefore reduced the amount for which plaintiffs should have judgment, by omitting therefrom any charge for rent for the two years just mentioned.

To this report both parties excepted, and the case was heard by his honor, Judge Hudson, upon the reports and exceptions. He rendered judgment, affirming the conclusions reached by the master, except as to the amount found due for rents, "or rather for use and occupation," holding that the charge for use and occupation should be fixed at two hundred dollars per year, without interest, and therefore rendered judgment for the sum of eighteen hundred dollars. He held that defendant having made no contract for rent, and not admitting his liability to pay rent, and having gone into possession. not "as a trespasser, but peaceably," he is not to be dealt with harshly, and is only liable to pay a reasonable sum for the use and occupation of the land under the circumstances, "and making a proper deduction for the obstruction of labor on said place, caused by the interference of the plaintiffs, which the master has not considered," he reached the conclusion that $200 per year for the nine years from January 1, 1876, to January 1, 1885, would be a proper charge for rent. At the conclusion of his decree, the Circuit Judge says: "Nothing

has been said in this decree, nor in the report of the master, about the defendant's right to recover for the large sums of money paid by him for taxes, because, as I understand, he has already recovered judgment therefor against these plaintiffs." After this decree was filed, the defendant made a motion before Judge Hudson, at chambers,[1] to amend his decree in certain particulars mentioned. This motion was refused upon the ground that "the decree having been filed and become of record in the court, and this court having adjourned without day, I am satisfied I have no jurisdiction to entertain the motion at chambers."

From this judgment both parties appeal upon the several grounds set out in the record (the defendant appealing also from the order refusing his motion to amend the decree), which, without following the order there pursued or the phraseology there used, may be stated substantially as follows:

PLAINTIFFS' GROUNDS OF APPEAL.—1st. Because of error in fixing the rental value of the land at only $200 per year. 2nd. In disallowing interest on each year's rent. 3rd. In holding that the interference of plaintiffs lessened the rental value. 4th. In not holding that the tax sale was illegal, null, and void. 5th. In embracing in the judgment the rents for the years 1881 and 1882.

DEFENDANT'S GROUNDS OF APPEAL.—1st. Because of error in not holding that the sale for the commissioner, Campbell, was void, and that plaintiffs had no title to the land in question. 2nd. In not holding that defendant was the purchaser of the land at the tax sale, and as such entitled to the rents and profits. 3rd. In not allowing defendant to amend his answer by pleading the statute of limitations. 4th. In holding that defendant should account for the rental value, whereas he should have held that, if liable at all, he should only account for rents actually received. 5th. In not allowing defendant credit for the amounts paid by him to redeem the land and for subsequent taxes thereon, and for improvements put on the place by defendant, with interest from the date of each payment. 6th. In not holding that the value of the rents and profits had been little or nothing, owing to the con-

---

[1] In Spartanburg.—REPORTER.

stant interference of plaintiffs. 7th. In not holding that the deed from the master to the plaintiffs, under the order confirming the compromise made between the plaintiff and the heirs of W. R. Young, vested no title in plaintiffs until it was executed, and could not relate back to the date of the sale for partition. 8th. In not holding that the compromise just referred to in the preceding ground was a final adjustment of all claims arising out of or in relation to the land, and that plaintiffs by such compromise acquired no right to an accounting from defendant. 9th. In not holding that the money paid by defendant to redeem the land was paid under an agreement with the plaintiff Young, and the same has enured to his benefit. 10th. In finding that defendant has already recovered judgments against these plaintiffs for the amount paid by him to redeem the land and for taxes thereon subsequently accrued. 11th. In holding that he had no jurisdiction to modify or amend his decree.

First, as to plaintiffs' grounds of appeal. The first and third, without adverting at present to the distinction between "rental value" and "rents and profits," or implying that the defendant is liable for the "rental value" rather than for "rents and profits" merely, raise questions of fact, and under the well settled rule we cannot disturb the findings of the Circuit Judge.

As to the second ground. Inasmuch as there is no pretence that there was any agreement, either written or oral, to pay rent, and no amount specified therefor, we think there was no error in disallowing interest.

The fourth ground is taken, as it seems to us, under a misconception of the findings below. The master found explicitly that the defendant acquired no title under the tax sale, not only because no deed was made to him, but because the land was improperly laid off by the survey, and this finding was affirmed by the Circuit Judge; for he affirmed all of the findings by the master, except with reference to the amount with which defendant should be charged for rent and the interest. Indeed, we do not understand that defendant bases his claim to be exempt from liability for rent upon the tax sale, but upon the ground that, having redeemed the land, he went into possession under an understanding that he should reimburse himself from the rents, which he

claims proved insufficient for that purpose, and then in fee for the estate of W. R. Young, deceased.

The fifth ground of appeal is well taken. The Circuit Judge, in making up the amount due by defendant, manifestly over-looked the finding of fact by the master that the defendant did not and could not collect the rents for the years of 1881 and 1882, and that therefore he should not be chargeable with the rent for those two years; and as the Circuit Judge in terms sus-tained the master in all respects, except as to the annual value of the rents, and the charge of interest, we must infer that it was a mere oversight in charging defendant with rents for those two years. But whether an oversight or not, we think it was clearly erroneous to include the rent for those two years, and therefore the judgment below should, in any view of the case, be reformed in this respect.

Next, as to defendant's appeal. His first ground raises what we regard the most serious question in this case. If the plaintiffs had no title, either legal or equitable, to the W. R. Young tract of land at the time they commenced their action, we do not see how the present action can be maintained. For it is well settled, both upon principle and authority, that no action can be maintained unless the plaintiff has a cause of action at the time the action is commenced. *Bank* v. *Manufacturing Co.*, 3 Strob., 190 ; *Moon* v. *Johnson*, 14 S. C., 434. As is said by Evans, J., in the former case : "In the action of trespass to try titles, as well as in other actions, the question always is—had the plaintiff a cause of action when the suit was commenced ?" In both of the cases it was held that the fact that the plaintiff had acquired title after the action was commenced and before it came to a hearing, could not affect the question, and would not relieve the plaintiff. Now, unless the plaintiffs had acquired title to this land before they commenced their action, we do not see how the action could be maintained, unless the right to rents and profits had been previously assigned to them by the true owner, of which there is no evidence.

So that the question whether these plaintiffs had any title to the land at the time they commenced their action becomes one of primary importance. It is true that they had a conveyance from Wm. Young, as executor and devisee of his father, 'Samuel

Young, long before this action was commenced; but unless Samuel Young had title (there being no pretence that Wm. Young ever had title except through his father, unless by adverse possession), no title could pass by such conveyance to these plaintiffs. So that the question resolves itself into an inquiry whether Samuel Young ever had title.   It is quite certain that he never had any legal title, as he never received any deed from the commissioner from whom he claims to have bought.   Immediately upon the death of W. R. Young, the legal title to this land descended to and vested in his heirs at law, he having made no disposition thereof by his will, and it must have remained in them until divested by their own deed, or by some conveyance made under the proceedings for the partition of their ancestor's estate.   No such deed having been made, unless it were to Campbell, up to the time of the commencement of this action, the legal title still remained either in the heirs of W. R. Young or the heirs of Campbell at that time.

It is claimed, however, that although Samuel Young never received any deed, yet having gone into possession on January 1, 1864, and having continued to hold the land as his own up to the time of his death in 1865, after which it was held by Wm. Young, as his executor and devisee, until April 7, 1876, when he conveyed to these plaintiffs, title had accrued by adverse possession.   It is also claimed by defendant's counsel, that during the possession of Samuel Young and his son, the heirs of W. R. Young, or at least some of them, were minors.   But waiving this, and assuming that there were no opposing minorities, we do not see how title can be claimed by adverse possession, for the reason that a surrender by Wm. Young, under the circumstances above detailed, was an abandonment of adverse possession from the commencement of the suit in 1868.   It is true that the mere bringing of an action does not suspend the statute of limitations, where the suit is dropped without judgment; but where the possession is surrendered to the actor, as it was here, in a general compromise of disputes between the parties, to tack possession after the suit would be a fraud on the actor, if he were sued by him who delivered the possession or his alienee.   Such surrender is an acknowledgment that the right of possession was in the

actor from the commencement of suit. Rent is an incident of possession or the right of possession (*Jones Mort.*, § 1659) ; and also because Samuel Young went into possession under a contract to purchase. It does not seem to us, therefore, that either Samuel Young, or those claiming under him, had ever acquired the legal title before this action was commenced.

The next inquiry is, whether they had ever acquired an equitable title. Assuming that the sale by Campbell, commissioner in equity, under the proceedings for partition, was not void, but merely voidable (*Black* v. *Childs,* 14 S. C., 312), and that, so far from the same having been avoided by the parties entitled so to. do, it has been actually ratified and affirmed by the action commenced on November 23, 1883, in behalf of the heirs of W. R. Young to enforce the payment of Campbell's bond, and to subject the land to the payment thereof under the statutory lien, and that Samuel Young went into possession under his contract to purchase from Campbell, yet he would not be entitled to demand a legal title until the purchase money had been paid or tendered, and therefore could not be said to have the equitable title. So that the practical inquiry is, whether the purchase money had been paid, there being no pretence of any tender. .Exactly what was the understanding between Samuel Young and Campbell, when the former deposited with the.latter Confederate treasury notes to the amount of the bid, does not distinctly appear. The master finds that Young was unwilling to comply with the terms of sale by giving his bond with two sureties, but "deposited with the said B. R. Campbell the purchase money in Confederate States notes, to be applied to the bond when it became due"—referring to the bond which Campbell gave to himself as commissioner in equity. This certainly was not a payment of the purchase money at that time for two reasons : 1st. Because Campbell had no right to receive it then, even in gold. 2nd. Because the treasury notes, not being money, could not be regarded as a payment unless received as such by the party entitled to receive the amount, or unless it produced payment.

· When, therefore, Young deposited the Confederate treasury notes with Campbell, "to be applied to the bond when it became due," Campbell held those notes simply as the agent of Young,

under a contract either express or implied, to apply them in payment of the bond when it became due, and there is no finding of fact, either by the master or Circuit Judge, that they have ever been so applied, and the testimony in the case would seem to show that there never had been any such application, except as to the first instalment of the bond, as to which it is at least doubtful whether Campbell had any right to make any such application when that instalment fell due. We must conclude, therefore, that the plaintiffs have failed to show that the purchase money had ever been paid up to the time of the commencement of this action. It seems to us, therefore, that plaintiffs having failed to show that they had either legal or equitable title to the W. R. Young tract at the time they commenced their action, they have shown no cause of action to recover rents accrued prior to that time.

This is conclusive of the case, and therefore it is not necessary to consider the other questions raised by the defendant's appeal, but as they have been presented, it may not be amiss to dispose of them.

The second ground cannot be sustained. The tax sale not having been conducted in the manner prescribed by law, and the part bid off by defendant not having been laid off to him in the mode prescribed by statute, he could not be regarded as the purchaser of the tract in question, and was, therefore, not entitled to receive, and did not receive, a deed therefor from the auditor.

The third ground is not well taken. Applications for leave to amend are ordinarily addressed to the discretion of the court, with the exercise of which this court is not disposed to interfere. Here the application was for leave to amend the answer by pleading the statute of limitations, after the case had been heard at length upon its merits, doubtless after much time had been consumed and much expense incurred in the investigation of the case, as presented without the plea of the statute, and we cannot say that the refusal of the motion to amend, at that stage of the case, was such an abuse of discretion as would justify this court in interfering.

The position taken in the defendants' fourth ground of appeal seems to rest upon a misconception of the Circuit decree. As we understand it, Judge Hudson recognized the distinction between

the liability to account for "rental value," and for "rents and pro-
fits," holding, by implication at least, that the former measure of
accountability was applicable where one goes into possession of
the land of another wrongfully; but finding that the defendant
in this case had gone into possession not "as a trespasser, but
peaceably," he should not be dealt with harshly, but held only to
the smaller measure of accountability—not for rental value, that
is, what the land would rent for if put up at public outcry—but
for such rents and profits as he had actually received, or ought to
have received, under all the circumstances.

The fifth ground is sustained, except as to the claim for inter-
est, so far as the principle involved is concerned, though we are
not to be understood as fixing the amounts of the credits claimed
in this ground. It seems to us that the defendant, having gone
into possession of the W. R. Young tract, not as a trespasser or
intruder, but with the understanding that he was to reimburse
himself, for the amount paid by him to redeem that tract at the
tax sale, out of the rents and profits, is clearly entitled, in equity
and good conscience, to have credit, when called upon to account
for such rents and profits, for the amount advanced by him to
redeem the land, as well as for such after-accruing taxes as he
may have paid on the land, together with the amount which any
permanent improvements made by him may have added to the
value of the land, when it was turned over to the legal owners.
As the rents accrued, they should be applied to these advances,
without any charge for interest on either side of the account.

In this connection, the tenth ground of appeal, which would
be well taken if this were an equity case, will be considered. The
Circuit Judge was mistaken in supposing that defendant had
already recovered a judgment against these plaintiffs for these
amounts. On referring to the records of the former case between
these parties, the final result of which may be seen in the case of
*Copeland* v. *Young*, 21 S. C., 275 (to which we have been au-
thorized to refer by the agreement of the parties in this case), it
will be seen that the claims now set up by the defendant herein
were not embraced in that case at all, for the reason, probably,
that when that case was instituted, and when it was determined,
the defendant was in possession of the W. R. Young tract, and

the plaintiffs had not then acquired any title to that tract. The claim in that case, therefore, was confined to amounts paid by defendant to redeem lands of the estate of Samuel Young, other than the W. R. Young tract.

The sixth ground raises a question of fact, and under the rule we see no ground for disturbing the finding of the Circuit Judge in respect to the matter there referred to.

The seventh ground has been practically disposed of by us in discussing the first ground.

The eighth ground is not well taken. The compromise therein referred to had no reference whatever to any claim which the plaintiffs might have or acquire to an accounting from the defendant herein for rents of the W. R. Young tract, but was simply a release of the plaintiffs herein from any liability to the heirs of W. R. Young for such rents.

Under the view which we have taken, the point raised by the ninth ground cannot be of any interest to the defendant. Indeed, if it could be sustained, it would show a several claim by defendant against the plaintiff, Young, which, under the case of *Copeland* v. *Young, supra,* could not be set off against the joint claim of plaintiffs.

The eleventh ground is not well taken. Whatever may be the powers of a Circuit Judge to amend or modify a decree rendered by him during the term, it seems to us clear, that after the court has finally adjourned, and the decree has been filed and become a record of the court, no such amendment as that asked for here could be made by the judge at chambers. This is shown by the quotation from *Dan. Ch. Prac.*, to be found in *Chafee* v. *Rainey* (21 S. C., at page 17). See, also, *Barrett* v. *James*, 30 *Id.*, 329.

To avoid misapprehension, it may be well to say, that in considering the several grounds of appeal, we have referred to them by the numbers given to them in this opinion, and not by the numbers as they appear in the record.

The judgment of this court is, that the judgment of the Circuit Court be reversed on the first ground taken by defendant, and that the complaint be dismissed.