13230

YOUNG, RECEIVER, v. PEOPLES BANK *ET AL.*

(161 S. E., 324.)

*Messrs. Philip H. Arrowsmith, R. E. Whiting* and *Baker & Baker,* for appellants,

*Messrs. Willcox & Hardee,* for respondent,

August 26, 1931.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appeal in this case was first heard at the June, 1930, term, and on October 3, 1930, an opinion, delivered by Mr. Justice Cothran, was filed, modifying in some respects the decree of his Honor, Circuit Judge Shipp. A petition for rehearing was granted, and the case was reargued at the June, 1931, term. An opinion, affirming the decree of Judge Shipp, written by Mr. Justice Cothran for the Court, was filed on August 26, 1931. We have had since for consideration, which we now dispose of, a petition for rehearing on the part of the appellants.

The first opinion written by Mr. Justice Cothran contains a clear and complete statement and analysis of the cause. The single point involved in the reargument was whether any judgment other than that of dismissal of the complaint could be rendered as to the individual defendants; this Court, in the opinion referred to, pointing out that the cause of action against the individual defendants had not accrued when the action was commenced.

The excellent analysis of matters involved in the consideration of the appeal, as they were stated by Mr. Justice Cothran, is entirely satisfactory and will be adopted. It was as follows:

"This is an action instituted June 4, 1927, by the Bank of Timmonsville, originally, and continued by the plaintiff its receiver, seeking:

"1. An accounting by the liquidating agent of the People's Bank of Timmonsville.

"2. The enforcement of certain equities in the assets of the People's Bank in the hands of the liquidating agent.

"3. The enforcement of the obligation of the People's Bank upon nine notes aggregating $89,522.36, executed by the People's Bank to the Bank of Timmonsville, representing the deposit liability of the People's Bank assumed by the Bank of Timmonsville.

"4. The obligation of the individual defendants, directors of the People's Bank, upon four of the nine notes referred to, aggregating $39,522.36.

"The case was referred to the Master by an order of his Honor, Judge Shipp, to take and report the testimony upon the issues involved. From this order the defendants appealed; it was affirmed by this Court, in an opinion filed November 27, 1928. *Bank of Timmonsville v. People's Bank,* 147 S. C., 461, 145 S. E., 288.

"Thereafter references were held and the testimony reported. The case was then heard by his Honor, Judge Shipp, who filed a decree in favor of the plaintiff, on September 16, 1929, from which the individual defendants have appealed.

"It appears that in October, 1924, there were two banks operating in the Town of Timmonsville, the People's Bank and the Bank of Timmonsville. At that time the People's Bank found itself in an embarrassed financial condition. Negotiations were instituted between the two banks which contemplated the closing of the People's Bank and the liquidation of its affairs through a liquidating agent selected by the People's Bank and approved by the Bank of Timmonsville.

"The amount due by the People's Bank to its depositors at that time was $89,522.36, and the amount due to its general creditors was large.

"Accordingly, on October 27, 1924, a written contract was entered into between the two banks, which was duly executed, ratified, and confirmed by the respective stockholders.

"The salient points of this contract were as follows:

"1. That the Bank of Timmonsville should assume the payment to the depositors of the People's Bank, of the amount to their credit on the books, of $89,522.36.

"2. That the People's Bank should transfer to the Bank of Timmonsville its entire assets, as security for the assumption of the deposit accounts.

"3. That, as further security for said assumption, the People's Bank should execute to the Bank of Timmonsville nine collateral notes, eight of which should be in the sum of $10,000.00 each, and the ninth note, in the sum of $9,522.36, aggregating $89,522.36, the amount of the assumed deposit accounts; the notes bearing interest at 7 per cent. payable annually; that four of the notes, three of which for $10,-000.00 each and the fourth for $9,522.36, should mature six months after date, and the remaining five for $10,000 each, twelve months after date; all to be secured by the aforesaid transfer of assets.

"4. That as additional security to said assumption, four of the notes aggregating $39,522.36 should be indorsed by each individual member of the board of directors of the People's Bank. The contract provided: '*  *  * that it is recognized that the individual endorsement of the members of the Board of Directors, or such number thereof as will be acceptable to the Bank of Timmonsville, is the inducing cause and factor whereby the Bank of Timmonsville assumes, the deposit liability of the People's Bank and that said endorsement is for a valuable consideration and is non-contestable by the individuals so endorsing said notes.'

"5. The contract then proceeds to declare the manner in which the indebtedness of the People's Bank should be liquidated:

"(a) Payment to the Murchison National Bank of Wilmington out of the first proceeds of liquidation.

"(b) Next, payment to the War Finance Corporation.

"(c) The securities held by these banks, upon payment of their claims to be added to the securities pledged for the

payment of the nine notes above referred to, given to the Bank of Timmonsville.

"(d) Next, to the five notes aggregating $50,000.00, given to the Bank of Timmonsvill as above stated, being the notes *not indorsed* by the directors.

"(e) Next, to the four notes indorsed by the directors.

"6. That the assets should be liquidated and collected as rapidly as possible, and in an orderly manner.

"7. 'In the event all assets thus pledged with the Bank of Timmonsville shall prove inadequate, the Bank of Timmonsville is to look to the individual endorsers on the four notes aggregating $39,522.36 hereinabove referred to for payment of such deficit, if any, as may arise. *Such endorsers shall not be called upon for payment, however, of the respective notes thus endorsed by them until all assets of the liquidating institution have been exhausted* and all such collateral shall be deemed exhausted when same has been reduced to judgment and the liquidating officer has received settlement therefor by execution or otherwise or has received a *nulla bona* return thereupon from the sheriff of the county in which the maker of such collateral is located. It is understood that such endorsement by the directors individually is for the purpose of indemnifying the Bank of Timmonsville against any possible loss to the extent of the aggregate amount of the notes so endorsed.'

"8. 'That it is agreed that the notes above mentioned in favor of the Bank of Timmonsville and maturing six and twelve months, respectively, from the date thereof may be renewed from time to time in the event such action becomes necessary up to the time of surrendering the charter of the People's Bank, but that such renewals in no event shall extend beyond a reasonable time for the liquidation of the affairs of the said People's Bank and the surrender of its charter.'

"9. The following provision was made for the appointment of a liquidating agent: 'It is agreed and so understood

by all parties to this instrument that the Board of Directors of the People's Bank will select a suitable person who shall have charge of and handle all of the affairs of the People's Bank in its process of liquidation; that such person so selected by the Directors of the People's Bank shall be approved by the Bank of Timmonsville. Such liquidating officer shall give his time to the duties incident to or in anywise connected with the orderly liquidation of the affairs of the People's Bank. The person so selected shall, before entering upon his duties, give bond in an amount and company acceptable to the Bank of Timmonsville, which bond shall be for the sum of not less than Twenty Thousand ($20,-000.00) Dollars and such liquidating officer shall be entrusted with all of the receivables of the People's Bank. From time to time, as necessity arises, he shall call to his assistance and work with the full membership of the Board of Directors of the said People's Bank. It shall be his duty to open a deposit account with the Bank of Timmonsville and deposit therein all funds collected by him from the collateral in his possession and he shall weekly make a report to the Bank of Timmonsville, indicating therein his progress as liquidating officer. In the event it becomes necessary for the liquidating officer to call to his assistance legal counsel to assist in realizing on the collateral in his hands, such counsel shall be selected only after being approved by the Bank of Timmonsville.'

"10. 'That the People's Bank is to continue to retain its charter for such period of time as is necessary to liquidate its business affairs, but is no longer to continue as an open banking institution; that in no event will the said People's Bank continue with the charter unsurrendered for a period of time beyond five years.'

"11. Conveyances by the People's Bank to the liquidating agent by a trust deed all of the real property owned by it.

"12. 'That it is understood that following the complete liquidation of the affairs of the People's Bank all net pro-

ceeds accruing from such liquidation process, after repayment to the Bank of Timmonsville of the sum due it by reason of the assumption of the deposit liability and after payment of expenses incident to the costs of liquidation, shall be delivered to the Board of Directors of the People's Bank.'

"This contract was duly executed, ratified, and confirmed by the proper officers and stockholders of the respective banks.

"In compliance with its undertaking to assume the liability of the People's Bank to its depositors, the Bank of Timmonsville passed to the credit of each depositor, upon its books, the amount due thereupon by the People's Bank, and has, with perhaps a few insignificant exceptions, paid these depositors in full.

"The People's Bank turned over all of its assets to the Bank of Timmonsville to be administered by a liquidating agent, R. B. Cannon, selected by the People's Bank and approved by the Bank of Timmonsville, as provided in the contract.

"The notes aggregating $89,522.36 were executed and delivered by the People's Bank to the Bank of Timmonsville, and four of them, aggregating $39,522.36, were indorsed by the individual directors of the People's Bank, as provided in the contract.

"On November 7, 1924, Cannon, the liquidating agent, as principal, with the American Surety Company, as surety, filed a bond in the sum of $30,000.00, *to the People's Bank*, conditioned upon the faithful performance of his duties as liquidating agent, to well and faithfully collect the assets due the bank, to keep a correct account and make an accounting to the People's Bank of his acts and doings in the premises. He immediately entered upon the discharge of his duties, installed a desk in the Bank of Timmonsville, and made deposits therein as collections were made. We must assume that he was acting under the supervision of the Bank

of Timmonsville in whose custody the assets of the People's Bank had been placed as stated. The assets amounted nominally to $139,420.99, estimated as

Good ..............................$ 80,024.42
Doubtful ................................. 25,717.78
Worthless ................................. 33,678.79

$139,420.99

—which does not appear to have included the real estate.

"In March, 1927, more than a year after the liquidating agent had undertaken his duties, considerable dissatisfaction was expressed by the stockholders of the People's Bank and by the Bank of Timmonsville, with the manner in which the liquidating agent was discharging his duties. Pressure was also brought upon him by the bank examiner to expedite the liquidation; all apparently without effect.

"On June 4, 1927, the Bank of Timmonsville instituted the present action. (It appears that thereafter the Bank of Timmonsville became insolvent and the plaintiff, Young, as receiver, was substituted as plaintiff.)

"The action is based upon the facts above stated, and upon allegations that the liquidating officer had failed to dispose of or realize upon a considerable part of the assets placed in his charge; that, notwithstanding repeated demands, he still failed to dispose of the real estate or to collect bills and accounts receivable; that a large number of the notes and accounts transferred to the liquidating officer had become worthless; that one member of the board of directors who had agreed to indemnify Bank of Timmonsville against loss had become bankrupt and another director had disposed of a considerable part of his property, and that the possibility of realizing upon the guaranteed notes was rapidly becoming remote; that in a period of nearly two and a half years only $18,510.46 had been paid on the entire deposit liability of $89,522.36; that a large proportion in value of the lands owned by People's Bank remained undisposed of; that con-

siderable additional lands had been acquired by the liquidating officer; that large numbers of the bills and notes had become worthless; and that the expense of obtaining *nulla bona* returns would impose unnecessary loss.

"The plaintiff admits payments made by the liquidating agent upon the indorsed notes (aggregating $50,000.00), amounting to $18,510.46 and demands judgment against the People's Bank for the balance due thereon $39,741.45 with interest from March 15, 1927; against the individual defendants for $39,522.36 with interest from October 29, 1924; that the defendant Cannon be required to make a report of his actings and doings as liquidating officer of People's Bank and to make a complete accounting for all amounts which have been received by him as liquidating officer, and that an order may be made directing the sale of all property, assets, and effects of People's Bank not heretofore disposed of by the liquidating officer; that the proceeds of sale may be applied to the payment of the judgments herein prayed for, and for such other and further relief as may be just.

"We do not deem it necessary, so far as the individual defendants, indorsers of the four notes aggregating $39,-522.36, are concerned, to consider any other defense than that the judgments against them have been prematurely rendered; and in deciding that issue we will consider only the proposition that under the terms of the contract, expressing the condition upon which the indorsements were made, the indorsers were not liable to a suit upon their indorsement 'until all assets of People's Bank had been exhausted.'

"The condition of affairs at the time of the commencement of the action is of course controlling. The liquidating agent had been in control from November, 1924, to June, 1927, practically two years and a half; his management had given great dissatisfaction to the stockholders of both banks; the plaintiff himself, in his complaint, making serious

charges of maladministration, but not asking to have him displaced, and acknowledging that much of the assets were still in his hands and susceptible of conversion into money, particularly the real estate. Of this there can be little doubt; *it certainly does not lie. in the mouth of the plaintiff to say that the assets had been exhausted.* (Emphasis ours.) In fact a part of the prayer of the complaint is 'that an order may be made directing the sale of all property, assets and effects of People's Bank not heretofore disposed of by the liquidating officer'; a prayer that would hardly have been proffered had there been no available assets.

"*What followed the institution of the action, further shows that the assets of the People's Bank in the hands, or under the control of the liquidating agent, had not been exhausted.* (Emphasis added.) As soon as the summons and complaint were served upon Cannon, the liquidating agent, he attempted to resign, and wiped his hands of further connection with the duties of his position on July 12, 1927, in a letter to the People's Bank.

"Thereafter, on August 17, 1927, his Honor Judge Shipp, signed an order appointing receivers of all the property, assets, and effects of the defendant, People's Bank. This order would hardly have been passed if there had been no available assets of the bank. (It appears that counsel for the defendants conditionally consented to this order, so far as the named receivers were concerned; otherwise it appears that he had no objection to it. But, if he had, he did not give notice of intention to appeal from it, and his exceptions complaining of it have not been considered.)

"Later, on September 5, 1927, his Honor, Judge Shipp, signed an order directing the receivers to sell the real estate belonging to the People's Bank standing in its name or in that of the liquidating agent. This would hardly have been done if there had been no real estate, available assets. (To this order counsel for the defendants consented unconditionally.)

"Later, on January 3, 1929, his Honor, Judge Shipp, signed an order directing the receivers to sell all of the assets and effects remaining in their charge or under their control as receivers of People's Bank—further evidence of the existence of unexhausted assets of the bank. (To this order counsel for the defendants does not appear to have consented. He did not, however, give notice of intention to appeal from it, and his exceptions complaining of it have not been considered.)

"Although the plaintiff demanded an accounting by the liquidating agent and the order of reference directed the Master to take and report the testimony upon the issues presented, we find in the transcript no satisfactory statement of such accounting. Practically all that appears in tangible form is the statement which the liquidating agent made in his letter of resignation dated July 12, 1927.

"From it we gather the following, which has been made with the corrections indicated below:

"COLLECTIONS

1. From items in full ......................$25,434.05
2. Interest on same ...................... 1,175.85
3. From items in part ..................... 9,614.56
4. From fixtures .......................... 2,530.00
5. From rents ,etc. ....................... 5,146.27
6. From sale building .................... 4,400.00

$48,300.73

"DISBURSEMENTS

1. To Murchison Bank ...................$15,734.99
2. To War Finance Corp. ................. 6,585.85
3. To Bank of Timmonsville ................ 18,510.56
4. To miscellaneous ...................... 4,584.94
5. To salary ............................. 1,883.32
6. To bal. due by agent .................. 1,001.17

$48,300.73

## "RECONCILEMENT

"(a) The total debits, from the agent's statement, should be $47,201.22, instead of $46,901.22, a difference of $300.00, against the agent.

"(b) Item 1 of collections should be $25,434.05, instead of $25,534.02, a difference of $100.00 in favor of the agent.

"(c) Item 2 of collections should be $1,175.85, instead of $1,142.13, a difference of $33.72, against the agent.

"(d) Item 3 of collections should be $9,614.56, instead of $8,461.06, a difference of $1,153.50 against the agent.

"(e) Item 5 of the collections should be $5,146.27, instead of $5,133.98, a difference of $12.29 against the agent.

"(f) Item 3 of disbursements should be $18,510.46, intead of $18,010.46, a difference of $500.00 in favor of the agent.

Balance of cash as per agent's statement........$ 101.66
Add discrepancy (c) .......................  33.72
Add discrepancy (d) ....................... 1,153.50
Add discrepancy (e) .......................  12.29
Add discrepancy (a) .......................  300.00

$1,601.17

Deduct credit (b) ................$100.00
Deduct credit (f) ................ 500.00

$ 600.00

Bal. due by agent .................           $1,001.17

"This accounting is not at all satisfactory. A new and full accounting should be made by Cannon the liquidating agent."

It appears from the very clear foregoing analysis that, at the time of the final decree of Judge Shipp, September 18, 1929, all the assets of the People's Bank had been disposed of by the receiver of the Bank of Timmonsville under pre-

vious orders of the Court, made after this action was in-
stituted, and that the proper application of the proceeds
would require them to be credited on the unindorsed notes;
and therefore there remained only the accountability of the
liquidating agent of the People's Bank, concerning which
Judge Shipp properly held that defendants "are not entitled
to claim any credit beyond the amounts actually received by
Bank of Timmonsville for any of the property handled by
him."

In this situation, it is claimed, in behalf of the receiver
of the Bank of Timmonsville, that, since the proceeds of
assets of the People's Bank had to be applied first to the
unindorsed notes, there would be nothing therefrom to ap-
ply to the indorsed notes, and plaintiff was therefore en-
titled to judgment against the individual defendants on the
notes they indorsed, as ordered to be entered under the
decree of the Circuit Judge.

On the other hand, appellants stand on the terms of the
contract, expressing the condition upon which their indorse-
ments were made, and make the contention that the suit, as
to them, must be dismissed because of the agreement that
they were not to be called upon for payment of the notes
they indorsed until all assets of the People's Bank had been
exhausted.

Appellants' position is strongly supported by the authori-
ties. It has been a generally recognized rule, receiving appli-
cation in many cases, that the plaintiff must stand or fall by
the condition of affairs existing at the time of the com-
mencement of the action.

In *Anderson v. Pilgram,* 30 S. C., 499, 9 S. E., 587, 589,
4 L. R. A., 205, 14 Am. St. Rep., 917, a foreclosure pro-
ceeding had been brought because of default in the payment
of one of several notes payable at different times. Suit was
instituted, while the foreclosure proceeding was still pend-
ing, on one of the notes which had matured after the com-
mencement of the first action. Holding that the note sued on

in the second action was not included in the former action to foreclose the mortgage, the opinion, written by Mr. Justice McIver, pointed out that "no action can be maintained on a note until after it becomes payable, except under the special circumstances provided for by statute, which have no application here"; and "as these other notes had not become payable at the time of the commencement of the former action, the action as to them would fail, for, as is said by Mr. Chief Justice Simpson in *Moon v. Johnson,* 14 S. C., 436, upon the authority of *Bank v. Manufacturing Co.,* 3 Strob., 190 [49 Am. Dec., 640] : 'No party can recover in an action which was commenced when the cause of action had not accrued'."

Leading authorities from other jurisdictions emphasize the correctness of the principle.

In *American Bonding & Trust Co. v. Gibson County* (C. C. A. 6th Circuit), 145 F., 871, 874, 7 Ann. Cas., 522, the Court said: "Plaintiff's right to any recovery depended upon its right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect, which cannot be cured by the accrual of a cause pending suit. * * * When prematurity appears, the suit should be dismissed without prejudice to the right to institute a suit upon the cause of action when mature."

In 1 L. R. C. L., 340, it is said: "The general rule is that the plaintiff's right to a recovery depends upon his right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect which cannot be cured by the accrual of a cause pending suit, and that when it has been shown that an action was prematurely brought, it should be dismissed without prejudice to the plaintiff's right to begin a new action on the accrual of the cause of action."

Also in 1 C. J., 1151, it is said: "The general rule is well settled that an action commenced before the cause of action has accrued, as upon a debt or demand not yet due, is pre-

maturely brought and cannot be maintained, provided an objection on this ground is properly and seasonably interposed; and the fact that the cause of action accrued after the action was commenced and while it is pending does not authorize it to proceed."

Establishing the same doctrine, in our opinion, are the following cases, found in our own reports: *Bank of State v. Manufacturing Co.,* 3 Strob. (34 S. C. L.), 190, 49 378; Dec., 640; *Josey v. Dixon,* 12 Rich. (46 S. C. L.), 378; *Moon v. Johnson,* 14 S. C., 436; *Garlington v. Copeland,* 32 S. C., 57, 10 S. E., 616; *Correll v. Georgia, etc., Co.,* 37 S. C., 444, 16 S. E., 156; *Francis Marion Hotel v. Chicco,* 131 S. C., 344, 127 S. E., 436.

It is suggested, however, that it could avail nothing to the defendants to sustain their contention and dismiss the complaint just to start all over again upon issues that have been already determined.

The proposed disposition of the case is clearly untenable. The defendants, whatever their ultimate liability may be, are entitled to insist that they are not liable except as stipulated under the terms of the contract expressing the condition upon which their indorsements were made; and they are, therefore, by express contract provision, not liable to a suit upon their indorsement "until all assets of People's Bank have been exhausted." This Court has no right to change the contract or to make a new one for the parties that will create different terms of liability. It is obvious that the practice of prematurely bringing actions on indebtedness not due might be so used as to bring confusion, uncertainties, and complications, impossible to guard against, into the orderly arrangements of business affairs. Obviously, also, one is entitled not to be harassed or embarrassed by suits, or subjected to the expenses of litigation, until a cause of action accrues.

Sound reason exists, therefore, for the rule that plaintiff must stand or fall by the conditions which exist at the time

of the commencement of the action; and there appears no reason to except the present case from the rule. This action, seeking an accounting by the liquidating agent, and also the enforcement of certain equities in the assets of the People's Bank in the hands of the liquidating agent, quite properly brought in the defendant indorsers as parties defendant, since, as has already been pointed out, the defendants, as guarantors of the People's Bank notes, had an interest in both the accounting and the liquidation of the assets. The equitable jurisdiction of this Court, invoked for a complete determination or settlement of the questions involved in the action, is, however, manifestly subject to the limitation stated in *Anderson v. Pilgram* and other authorities, above cited, that the plaintiff is not entitled to demand a money judgment upon an obligation which had not become payable at the time of the commencement of the suit.

It is accordingly incumbent on the Court to hold that the cause of action for a money judgment against the individual defendants is governed by the terms of their contract of indorsement; it did not exist when the present action was instituted; and should therefore be dismissed without prejudice to the right of plaintiff to institute a new suit on the cause of action since matured.

It is therefore the judgment of this Court that this opinion filed on August 26, 1931, and that the judgment of this Court be in accordance with the views herein expressed.

Let this opinion and the judgment thereon be filed and remittitur stayed for the usual time under the rules of the Court.

Messrs. Justices Cothran, Stabler and Carter, and Mr. Acting Associate Justice Cosgrove concur.