### 10087

WHEELER v. WHEELER *ET AL.*

(96 S. E. 714.)

1. WITNESSES — EVIDENCE.—In action involving title to swamp land, when plaintiff testified to selling timber in swamp, allowing defendants, on cross-examination, to ask plaintiff if purchaser had not refused to pay for timber until title thereto was established was proper.

2. QUIETING TITLE—EVIDENCE.—In action involving title to swamp land, where son of W. T. K. had testified without objection that his father paid taxes during his lifetime, etc., sheriff's testimony that he had execution against estate of W. T. K. for taxes due on land for particular year was admissible.

3. EVIDENCE—JUDICIAL NOTICE—STREAMS AS SWAMPS.—Courts take judicial notice that in South Carolina small streams having a margin of swamp are frequently called swamps.

4. WATERS AND WATERCOURSES — SWAMP AS BOUNDARY.—Where swamp consisting of small stream with margin of swamp is given as boundary in deed, parties will be presumed to have intended middle of stream as boundary.

5. WATERS AND WATERCOURSES — SWAMP AS BOUNDARY.—Where stream is given as boundary, grant is presumed to extend to middle.

6. WATERS AND WATERCOURSES — SWAMP AS BOUNDARY — INTENTION.— Deed having named as boundary a swamp consisting of stream with margin of swamp, it may be shown that parties intended edge of swamp rather than stream as boundary, and, if that is made to appear, effect will be given intention.

7. EVIDENCE — BOUNDARIES — PAROL EVIDENCE.—The presumption being that where a deed names, as boundary, a swamp consisting of a stream with a margin of swamp, the parties intended the middle of the stream, rather than the edge of the swamp, as the boundary, parol evidence of a contrary intention is incompetent to vary or control the construction.

8. WATERS AND WTERCOURSES — SWAMP AS BOUNDARY. — The presumption being that, where a deed mentions as boundary a swamp consisting of a stream with margin of swamp, the parties intended the middle of the stream and not the edge of the swamp as the boundary, such construction may be varied or controlled by competent evidence appearing either upon face of deed itself or of plat made at time, and proof of actual location of different boundary on ground and possession taken and held to the boundary so located.

9. PROPERTY—PRESUMPTION OF TITLE.—Possession is presumed to follow title.

10. EVIDENCE—DECLARATIONS OF DECEASED SURVEYOR—COPY OF PLAT AND LETTER.—In action involving title to swamp land, sketch of original plat made by surveyor and sent to one of defendants, with his letter explanatory thereof, *held* admissible as declarations of deceased surveyor cognizant of facts, there being nothing in either contradictory of plat in evidence or deed from a defendant to plaintiff's predecessor.

11. APPEAL AND ERROR—HARMLESS ERROR—EVIDENCE.—In action involving title to swamp land, error in permitting a defendant to testify as to what parties meant by "Pudding Swamp" and what they intended to convey, *held* harmless to plaintiff and another defendant, appellants.

12. APPEAL AND ERROR—HARMLESS ERROR—CONSTRUCTION OF INSTRUMENT.—In action involving title to swamp land, Court's error in telling jury that he could not tell them what a plat in evidence said, *held* harmless to plaintiff and a defendant, appellants, it not being reversible error to submit construction of written instrument to jury where its meaning is plain, if verdict shows jury rightly construed it.

13. TRIAL—CONSTRUCTION OF WRITTEN INSTRUMENTS—DUTY OF COURT.—It is duty of Court to construe written instruments, as a plat, and to tell jury not only what they say, but what they mean, except in case of latent or patent ambiguity raising an issue of fact.

Before DeVore, J., Spring term, 1916.    Affirmed.

Action by R. E. Wheeler against S. M. Wheeler and others. From the judgment, plaintiff and the named defendant appeal.

*Mr. DuRant,* for R. E. Wheeler, appellant, submits: *That the words "bounded by Pudding Swamp," mean the thread of the stream:* 3d Kent's Com. 428; citing 1 Sim & Stewart 190; 17 Pick. 41; 4 Rich. L. 84; 2 N. & McC. 99; 2 McM. 47; McM. Eq. 290; 27 S. C. 144; 43 Am. Dec. 672; Rand. 417, 420; 13 Allen (Mass.) 146, 154; 6 Conn. 471- 474; 128 Pa. 528, 532; 18 Atl. 390; 56 S. E. Rep. 136; 71 Fed. 526; 19 C. A. 99; 37 U. S. App. 539; Fed. Cas. No. 6, 169 (Pet. C. C. 64); 8 Cent. Dig. 533; 7 R. I. 411; 1 Cyc. 634. *The deed and plat being repugnant, the deed governs:* 5 Cyc. 914; 13 Cyc. 634; 52 Am. Dec. 482; 137 Ga. 308; 73 S. E. 640; 1 R. I. 411; 63 S. W. (Ky.) 288; 77 S. E. 376; 42 S. C. 342; 20 S. E. 151; 35 S. C. Eq. (14 Rich. Eq.) 271; 1 Dev. on Deeds, sec. 213, *et seq.;* 82 Ark. 209; 101 S. W. 407; 12 L. R. A. (N. S.) 956, and note; 102 S. C. 242; 3 S. C. 251; Cruise's Digest, tit, 32 Deed, c. 19, sec. 13; 52 Am. Dec. 484; 3 Am. Dec. 500. *The construction of the deed and plat is for the Court:* 82 S. C. 70; 8 Rich. L. 320;

4 Rich. L. 80; 46 S. C. 220; 59 S. C. 590; 24 S. C. 359; 11 Conn. 332; 29 Am. Dec. 299; 42 Conn. 269; 12 Allen (Mass.) 86; 73 S. E. 645; 15 S. C. 32; 6 S. C. 353; McMull. 462; Greenl. Evd., S. C. 276, 277; 38 S. C. 420; 35 S. C. 127; Greenl. Evid. S. 275; 42 S. C. 8; 17 S. C. 480; Starkie on Evidence, vol. 75; 67 S. C. 331. *Plaintiff being in possession does not have to rely on the strength of his own title, and unless the defendants set up affirmatively some title or possession in themselves the plaintiff should recover, even if without title:* 31 S. C. 266; 101 S. C. 48; 103 S. C. 466; 8 Rich. Law 315; 53 S. C. 92; 3 Strob. 474, 477-8; 8 Rich. Law 321; 22 S. C. 361.

*Messrs. Davis & Wideman* and *J. A. Weinberg,* for defendants-respondent, cite: *As to refusal of motion to direct a verdict for plaintiff:* 2 McMull. 346; 5 Cyc. 904. *As to competency of parol testimony:* 5 Cyc., p. 967; 77 S. C. 456-7, 480; 92 S. C. 65. *As to the introduction in evidence of a drawing made at the time of deeds from the original source:* 2 Hill 492; 14 S. C. 549; 16 S. C. 469; 25 S. C. 187; 42 S. C. 146; 94 S. C. 77; 78 S. C. 521; 87 S. C. 388. *As to charge:* 1 Rich. 135; 22 S. C. 507; 44 S. C. 548; 22 S. E. 724; 67 S. C. 18; 45 S. E. 113; 49 S. C. 1; 100 S. C. 144; 63 S. E. 1130; 62 S. E. 884 (N. C.); 64 S. E. 997; 16 Cyc. 926; A. & E. Ency. (1st Ed.), vol. II, p. 655. *As to requiring R. E. Wheeler to testify to an agreement he had with purchasers to postpone payment for the timber sold on the lands in dispute:* 98 S. C. 234. *Color of title and claim to land need not be in writing, and can be shown by a line of stakes or the markings on trees:* 2 Rich. 629.

September 5, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The title to a tract of swamp land is involved in this action. Plaintiff alleges that he and the defendant, S. M.

Wheeler, are seized and in possession of a larger tract, described in the complaint, which includes the land in dispute, and that the other defendants (the Kennedys) claim some interest therein, but have none; and he prays that it be so adjudged, and that the land be partitioned between him and S. M. Wheeler.

Some of the Kennedy defendants answered, denying the title and possession of the Wheelers as to that portion of the tract which lies in Pudding Swamp, and claiming that they have both the title thereto and possession thereof. They also pleaded the statutes of limitations, and title by adverse possession and estoppel, the estoppel pleaded being an agreement between their ancestor and predecessor in title and his grantee (under whom the Wheelers claim) that the edge of the swamp should be the line between them, and their ancestor's and their possession of the swamp land ever since under that agreement. For convenience, we shall call the Wheelers the plaintiffs, and the answering defendants the defendants.

W. T. Kennedy, the ancestor of the defendants, is admitted to be the common source of title. In 1880 he conveyed to T. G. Robinson a tract thus described:

"On the east side of Pudding Swamp, containing four hundred acres, bounded north by Mrs. S. E. Johnson, east by W. T. Kennedy, south by J. E. Kennedy and west by Pudding Swamp."

It appears that J. W. Kennedy also conveyed the same tract to Robinson by a separate deed, containing a similar description of it.

The land in dispute lies in Pudding Swamp and west of the edge thereof. Plaintiff contends that as a matter of law, without regard to extraneous circumstances, the above description conveyed to Robinson title to all the land in the swamp to the middle run thereof, and that parol evidence tending to contradict, vary or control the legal construction of the description was erroneously admitted. Evidence was

admitted that at the time of the conveyance the tract conveyed was surveyed and located, and a plat thereof was made by J. E. McElveen, a surveyor, and that by the direction of the parties he made the edge of Pudding Swamp the line on the west; that he did not run the lines into the swamp, but stopped at the edge of the swamp, where he set up stakes; and that the tract so surveyed contained 400 acres, the quantity mentioned in the deed, without including any swamp land. W. T. Kennedy and T. G. Robinson were both dead at the time of the trial, and so was McElveen, the surveyor; but several witnesses, among them a son of Robinson, testified that during Robinson's possession he recognized the edge of the swamp as the line, and made no claim to any of the swamp land, and that Kennedy remained in possession thereof.

On May 12, 1885, Robinson conveyed a part of the tract that had been so conveyed to him to S. P. Brockington, describing the part conveyed as follows:

"All that certain tract, etc., containing 240 acres, more or less, bounded north by lands of grantor, east and south by lands of J. E. Kennedy, and west by the middle of the run of Pudding Swamp, and having such marks, boundings, and buttings as represented by a plat of same made by J. E. McElveen, D. S., and dated May 12, 1885."

Robinson's son (the witness above mentioned) testified that he was present and was one of the chain carriers on the survey made by McElveen, cutting off the 240 acres conveyed by his father to Brockington, and that his father and Brockington were also present, and that in surveying the land the surveyor stopped at the edge of the swamp. The plat referred to in the deed shows the swamp and the contour line thereof, which is indicated by a dotted line, on which is written, "The edge of the swamp is the line," and the north and south lines both stop at the edge of the swamp on the dotted line.

In 1890, S. P. Brockington conveyed the same tract to W. M. Brockington, giving the western boundary as "the middle of the run of Pudding Swamp," but he warranted the title only as against himself and those claiming under him. In 1898, W. M. Brockington conveyed it to W. R. Barrow and others, giving the same western boundary, and adding, "The premises herein conveyed being designated on plat of same made by J. E. McElveen, D. S., and dated May 12, 1885, and hereto appended." His warranty excepts the swamp land. All subsequent conveyances, including that to the plaintiffs, give the boundary on the west as "the middle of the run of Pudding Swamp," and all of them, except those to plaintiffs, refer to the McElveen plat, which was on record.

The land in dispute is not cleared. The swamp in which it lies is from one-half to three-fourths of a mile wide. In wet weather it is covered with water, but in dry seasons the water runs off, leaving the swamp comparatively dry, so that one can go about in it. Some of the witnesses said that it has no main stream or channel in which its waters are confined at any time; but at times there are two or three streams which run into each other, and even these vary in their location from time to time, so that it would be difficult, if not impossible, to determine where the run of Pudding Swamp is or was at any time.

Naturally, actual possession of such land is limited both in its continuity and manner, so that plaintiffs' effort to prove possession in themselves and their predecessors in title was limited to proof of such acts of dominion as getting straw and litter along the edge of the swamp and getting shingles out of the timber therein. As one such act, one of the plaintiffs testified that the timber in the swamp had been sold to a lumber company by him, or one under whom he claimed. On cross-examination the Court allowed defendants' attorneys to ask him if the purchaser had not refused to pay for the timber until the title

thereto was established. The exception to this ruling is clearly untenable. And so is the exception to the admission of the sheriff's testimony that he had an execution against the estate of W. T. Kennedy for the taxes due on the land for the year 1914. J. H. Kennedy, a son of W. T. Kennedy, had already testified, without objection, that his father paid the taxes on the land during his lifetime, and after his death his heirs had turned the land over to his brother, E. M. Kennedy, who was then dead, and some of the tax receipts had been introduced. He had also testified, without objection, that a tax execution against his father's estate was then in the hands of the sheriff. Besides, the testimony was competent in support of the defenses set up.

In this State small streams having a margin of swamp are frequently called swamps. For instance, Dean Swamp, Bull Swamp, etc., would ordinarily be understood to mean the streams bearing those names. The Courts have taken judicial notice of this custom, and hence the general rule is that where such a "swamp" is given as a boundary the parties will be presumed to have intended the middle of the stream as the boundary, in the absence of evidence of a different intention. *Felder v. Bonnett,* 2 McMul. 44, 37 Am. Dec. 545. That construction is in conformity with the general rule that where a stream is given as a boundary the grant is presumed to extend to the middle of the stream. But, as clearly appears from the decision in that case, the rule is not invariable or inflexible. It may be shown that the parties intended the edge of the swamp rather than the stream as the boundary, and, of course, when that is made to appear by competent evidence, effect will be given to their intention. It may be conceded that parol testimony of a contrary intention is incompetent to vary or control the construction. But, as pointed out in *Felder v. Bonnett,* it may be done by other competent evidence appearing either upon the face of the deed itself, or of the plat made at the time, and proof of the actual location

of a different boundary line on the ground, and possession taken and held to the boundary so located. Especially is this so where the boundary given in the deed is ambiguous or of doubtful meaning, as it clearly is in this case; for Pudding Swamp as a boundary may be either the edge of the swamp or the run of the stream. Suppose a swamp without a stream—then the edge of the swamp would necessarily be adopted as the boundary. So there is no irreconcilable repugnancy between the boundary given in the deed and that shown on the plat.

What we have said so far applies to the grant from the Kennedys to Robinson. And it follows that the Court was not in error in refusing to hold with plaintiffs that as matter of law, the description in the deed carried the title to the land to the middle run of the stream, because there was competent evidence which showed beyond dispute that such was not the intention. The undisputed oral testimony showed that the surveyor stopped at the edge of the swamp, and his plat showed "the edge of the swamp is the line" on the west, and the side lines did not extend into the swamp at all, but closed on the dotted line which was made to indicate the edge of the swamp. It would be difficult to conceive how the intention of the parties could have been made plainer or been more clearly proved.

It follows the Kennedys did not convey any of their swamp land to Robinson, and, having no title thereto, of course, he could convey none. So that the apparent repugnancy between the boundary given in his deed to Brockington and that laid down on the McElveen plat, made at the time and referred to in the deed, is of no importance, except in so far as the boundary in the deed may have given Brockington and those claiming under him color of title to the run of Pudding Swamp. But even that cannot affect the issues here, for they all knew of the plat, and it was on record, and they knew of defendants' claim to the land. Indeed, there is no pretense that any of them are *bona fide* purchas-

ers without notice.    Therefore they acquired no higher or better rights to the land in the swamp than Robinson had, and he had none.

Under the circumstances the burden was upon plaintiffs to prove their title to the land is dispute, and the Court correctly so ruled.    Plaintiffs' argument is based upon two erroneous assumptions: First, that the deed from the Kennedys to Robinson conveyed title to the land in dispute; and, second, that they proved conclusively possession in themselves.    Upon the face of the papers the title was in defendants, and that carried the legal presumption of their possession, since possession is presumed to follow the title.

There was no error in admitting the sketch of the original plat made by McElveen and sent to J. W. Kennedy and his letter to Kennedy explanatory thereof.    There was nothing in either contradictory of. the plat in evidence or the deed from Kennedy to Robinson.    The sketch and letter were admissible as the declarations of a deceased surveyor who was cognizant of the facts.    *Invester v. Fowler,* 96 S. E. 154; 109 S. C. 428.

The error of the Court in allowing J. W. Kennedy to testify as to what the parties meant by Pudding Swamp, and what they intended to convey, was clearly harmless, in view of what we have said as to the legal construction of their intention, as gathered from the deed and plat.

But when these are considered in the light of the undisputed evidence as to the location of the line by the surveyor, all possibility of mistake in the construction is removed.    And so was the error in telling the jury that he could not tell them what the plat said.    It is the duty of the Court to construe written instruments, and tell the jury, not only what they say, but, also, what they mean, unless there is ambiguity, latent or patent, in their meaning, such as raises an issue of fact.    But the error complained of was favorable to plaintiffs; for, if the Court had construed the plat, he

would have told the jury that it said the line stopped at the edge of the swamp and meant it, and that Robinson, therefore, acquired no title to the swamp land, and could convey none. Besides, we have held that it is not reversible error for the Court to submit the construction of a written instrument to the jury, where its meaning is so plain that no construction is necessary, if the verdict shows that the jury gave it the right construction.

Judgment affirmed.