12683

WELCH v. CARTER

(148 S. E., 697)

*Messrs. Lide & McCandlish,* for appellant,

*Mr. L. M. Gasque,* for respondent,

June 25, 1929.

The opinion of the Court was delivered by Mr. Justice Blease.

This action was commenced on or about February 19, 1927, to enjoin the defendant from trespassing upon a tract of land in Marion County, containing 52½ acres, and for damages for cutting and removing certain timber therefrom. The plaintiff alleges that she is seized and possessed of said tract of land. The defendant duly answered, interposing a general denial; pleaded the statutes of limitation; and alleged (1) that he is the lawful owner and in possession of two tracts of land in said county, containing 87.25 acres, (2) that he had been in adverse possession thereof for more than 10 years, and that his ancestors, predecessors, and grantors had been in possession thereof for more than 20 years, and (3) that plaintiff had trespassed upon the northern portion of said tract; and asked for damages and an injunction.

The tract of plaintiff lies north of and adjoins defendant's tract. The disputed area involves only 11.81 acres. The real dispute is the location of the dividing line between the tracts of plaintiff and the defendant. Plaintiff contends that the real dividing line is the line designated "A B C" on the plats introduced in evidence, while the defendant contends that the line designated "D G F" is the real dividing line. If the line contended for by plaintiff is the true dividing line, then the disputed area belongs to plaintiff, but if the line contended for by defendant is the true dividing line, then the disputed area belongs to the defendant.

The cause came on for trial before Judge W. H. Grimball and a jury at the December, 1927, term of Court for Marion County, and resulted in a verdict for the plaintiff. The de-

fendant moved before Judge Grimball for a new trial, on the ground that the verdict was against the overwhelming weight of the evidence. The motion was refused. Thereafter, the defendant moved before Judge Shipp for a new trial, on the ground of after-discovered evidence, but said motion was also refused. The defendant appeals to this Court on the grounds set out in the record.

Appellant's first exception is as follows:

■ "1. Because the Court erred, it is respectfully submitted, in charging the jury as follows:

" 'I charge you that the plaintiff and the defendant both have come in and claimed what is known to the law as paper title to the land, and so far as the law is concerned, both parties have an apparent good paper title to the land.'

"And in further charging the jury:

" 'And I charge you that both have an apparent paper title to the land.' "

We think this charge was erroneous. The only paper title introduced and relied upon by plaintiff was an old plat designated as the "Harllee Map" made in 1824, and a deed from Jane Bryant *et al.* to Solomon Bryant, plaintiff's father, the date of which does not appear, but which seems to have been probated and recorded in 1888. According to plaintiff's testimony, Solomon Bryant died in 1918. No paper title of any kind was introduced which conveyed to her the tract of land, or any part thereof, described in the Solomon Bryant deed. It is true that plaintiff is the daughter of Solomon Bryant, but it does not appear she was the only child of Solomon, or that his wife did not survive. It was not established that plaintiff inherited this land from her father. In the absence of evidence to the effect that plaintiff was the only heir of Solomon, or the only surviving heir of any widow or other children of Solomon, it could not be said that plaintiff has an apparent good paper title. Commenting upon a similar break in a chain of title, in *Battle v. De Vane,* 140 S. C., 305, 138 S. E., 821, Mr. Justice Cothran said:

"There is another break in the plaintiff's chain, in the devolution from Nancy Strickland to her daughter, Joanna, who married Todd. It does not appear that Joanna was the only child of Nancy Strickland or that her husband was not alive at her death. The claim that Joanna inherited from her mother has not been established."

The second exception complains of error on the part of the trial Judge in not charging defendant's fifth request, which is as follows: "If you find from the evidence that plaintiff's predecessor in title was present and assisted in making the plat of the land on the west side of the public road which has been introduced in evidence by defendant and that he agreed to the line as made on the plat as being the correct location thereof, then the present owner of the premises who claims directly under him would be estopped to question the correctness of such line, and your verdict must be for the defendant for this part of the land in dispute."

There was testimony on behalf of defendant to the effect that at a survey made by Col. Johnson in 1911 of defendant's tract of land, Solomon Bryant was present and agreed that the line then run by Col. Johnson, and shown on the plat of said survey, was the correct dividing line between his land and that of the defendant. Evidence was offered on behalf of plaintiff to the effect that no such agreement was made by Solomon Bryant. The matter should have been left for the jury to say whether or not there had been such an agreed line. The law applicable in such a case is clearly stated by Mr. Justice McIver in *Davis v. Elmore,* 40 S. C., 533, 19 S. E., 204, as follows: "Surely, there cannot be any doubt that where the dividing line between two coterminous proprietors is doubtful, and for the purpose of solving such doubt they meet together and establish an agreed line, such agreed line must be regarded in all future controversies to be the true line. And there can be as little doubt that if the defendant's grantor, Garrison P. Davis, was present at, and

acquiesced in, the establishment of the agreed line in question, both he and his subsequent grantee, the defendant, would be bound thereby. This is precisely what the Circuit Judge charged the jury, leaving it to them to determine the question of fact whether Garrison P. Davis was present at, and acquiesced in, the establishment of such agreed line."

If Solomon Bryant was present at, and acquiesced in, the establishment of the line as claimed by defendant, both he and those claiming under him would be bound thereby, unless he or they thereafter acquired new rights by adverse possession or otherwise, in the land lying south of said agreed line. Of course, if there was an established agreed line in 1911, and Solomon Bryant died in 1918, there could be no title by adverse possession in lands south of said agreed line. For this reason, it should have been left to the jury to determine whether or not Solomon Bryant was present and agreed on the line in question, since whatever rights he might have acquired in the lands lying south of said line were waived or abandoned by agreeing to said line, if he, in fact, agreed thereto.

We do not think the trial Judge committed error in modifying defendant's ninth request to charge. This request and the modification complained of are as follows:

"If you find from the evidence that 'the plat made by D. S. Harllee in 1824, introduced in evidence by the plaintiff as a muniment of title, shows the same line 'as that shown on the plat introduced in evidence by the defendant, then the plaintiff would be estopped to deny the correctness of such line; by adding thereto the following:

"But I further charge you that it would not prevent the plaintiff from showing by the greater weight of the evidence that she had title to the disputed area by the ten years or twenty years adverse possession, as I have charged you the law to be."

Even if the line shown on the Harllee plat is the same as that shown on defendant's plat as "D G F," it does not fol-

low that Solomon Bryant did not have title to the disputed area by adverse possession, unless he agreed to the line "D G F" as his southern boundary.

Having reached the conclusion that there should be a new trial, it is unnecessary to consider Exceptions 4 and 5.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE GRAYDON concur.

MR. CHIEF JUSTICE WATTS did not participate.