16989

HAZARD RICHARDSON, Respondent, v. JOHNNY REGISTER, Appellant

(87 S. E. (2d) 40)

82

· *Messrs. D. W. Green, Jr.,* and *Epps & Hoffman,* of Conway, *for Appellant,*

*L. B. Dawes, Esq.,* of Loris, *for Respondent,*

April 11, 1955.

STUKES, Justice.

This action resolved itself into an action to try title to nine and one-half acres, largely woodland, which lies to the south of plaintiff's admitted acreage, and to the north of the defendant. There is no question of adverse possession. It is really a dispute as to the location of the dividing line of the respective farms of the litigants.

The issue was submitted to the jury which returned verdict for plaintiff and the defendant has appealed upon numerous exceptions.

The plaintiff purchased from W. T. Johnson who made deed to him dated November 16, 1943, which contained the following description:

"All that tract of land in Dog Bluff Township, County of Horry, and State of South Carolina, containing 43.8 acres and being bounded on the northwest by lands of

Burroughs Johnson, Elbert Johnson, Elizabeth Singleton and Sue Singleton; on the northeast by lands of Geo. J. Holliday estate and the run of Mill Branch; on the southeast by lands of Geo. J. Holliday estate and on the west or southwest by land of Shafter Johnson.

"The said tract of land hereby conveyed is more fully shown on a plat made by A. J. Baker, Surveyor, October 21, 1943, and which plat is made a part of this description.

"This is the same tract of land which was owned by Annie J. Johnson and then by W. T. Johnson at the time of their deaths and conveyed to the grantor by the other heirs of the said persons."

There was uncertainty of the location of the eastern corner of the southern line of the tract (which is defendant's northern line) and after plaintiff and Johnson had agreed upon a lump sum price for the land, plaintiff employed a surveyor and he and Johnson accompanied him to make the survey. Also present was one Atkinson who was the employee and representative of the devisees of Holliday who then owned the land to the south, which is now defendant's. No plat or former deed was available to show the location of the unknown southeastern corner.

Plaintiff testified, in effect, that because he was in a hurry for a plat, which was necessary in the financing of his purchase, he and Mr. Atkinson agreed that the corner would be located where the latter thought it was, and that later, if found to be incorrect, it would be adjusted. Atkinson did not testify, nor does the record show that he was subpoenaed. After the conclusion of the evidence and during the argument defendant's counsel handed up to the court a doctor's certificate that Mr. Atkinson was sick; but there was no motion for continuance or any effort to procure Mr. Atkinson's testimony. Therefore plaintiff's testimony that there was no definite agreement between him and Atkinson upon the location of the line, in which he was corroborated by another witness who was present at

the survey, was uncontradicted and the jury were fully justified in accepting it, which their verdict shows they did.

Several years after plaintiff's purchase of the Johnson tract to the north, the defendant in 1947 purchased the land to the south of it from the devisees of Holliday who made deed to him which contained the following description:

"All and singular that certain piece, parcel or tract of land lying and being in Dog Bluff township, Horry County, State of South Carolina, containing forty nine (49) acres, more or less, one acre having been sold to Townsend Register, and described as follows in deed from M. E. Brown and W. L. Brown to Geo. J. Holliday dated Dec. 30, 1913 and recorded in book XXX, page 309, C. C. C. P. Horry County: 'Bounded as follows: north by lands of Annie J. Johnson, east and south by lands of Marion Johnson and west by lands of J. R. E. Johnson, being the identical tract of land conveyed to us by Geo. J. Holliday.' One acre at the southwest corner having been sold to Townsend Register, the present boundaries are: north by Hazard Richardson, east by Holliday Bros. (A. R. Singleton land), south by Townsend Register, and west by L. B. Register and Shafter Johnson.

"Reference is made to the above referred to title, the said tract being described as tract No. 1 in same."

It is noted that the foregoing description referred to the northern boundary as lands of Annie J. Johnson which was the tract purchased by plaintiff and referred to in the deed to him.

The court appointed two surveyors, one of whom had made the plat for plaintiff, to make a joint survey, which they did, and their plat shows the disputed area with the southeastern corner on an old mill dam, which was referred to in former deeds in the chain of title which were introduced in evidence and at which old witnesses were found upon the court-ordered survey. One of the surveyors testified in be-

half of plaintiff, the other for the defendant. However, the latter gave the following testimony which supported plaintiff's case, in reference to the deeds in his claim of title:

"Q. Do the descriptions you have read in the deeds cover the disputed area? A. I'll say that one deed I read covers the disputed area.

"Q. Which one was that? A. That was the second one I read. The one from the heirs of Annie Johnston to W. T. Johnston.

"Q. It does cover the disputed area? A. Yes, sir."

Defendant's first contention is that the plaintiff was bound by his plat of 1943, made for the purpose of his purchase, which showed the disputed boundary as claimed by the defendant. But we think that the deed was properly held by the court to be subject to explanation by extrinsic evidence in order to show the intention of the parties. The plat was made a part of the description but the land was also identified as that formerly owned by Annie J. Johnson, which the preponderance of the evidence showed extended to the southern line which was claimed by plaintiff. There was, therefore, a latent ambiguity in the description, which made extrinsic evidence competent.

In *Stephens v. Long & Bellamy,* 92 S. C. 65, 75 S. E. 530, 533, in which the facts were about the converse of this, the court said: "Appellants contend that the court should have construed the deed of the Verdier heirs to defendant Long, and have charged the jury that it conveyed the entire 'Spring Hill' plantation. The court could not have done so without invading the province of the jury. The question was one of intention." The following similar quotation is from *Holliday v. Jordan,* 112 S. C. 113, 99 S. E. 465, 467: "The description of the land conveyed by the instant deed involves a latent ambiguity, and the jury was entitled to know all the circumstances which surrounded the parties when the deed was executed, the most potent of which was the Legette plat, along with the declaration of Holliday to Jordan when the plat was delivered into Jordan's hands. And the

issue ought to have been submitted to the jury whether the sale and purchase was made under the Legette plat or otherwise." It was held that in every such case the question is, What did the parties intend when the deed was made?

Likewise applicable against the contention of the ▓ defendant is the following excerpt from the opinion in *Powers v. Rawls,* 119 S. C. 134, 112 S. E. 78, 86: "The sole purpose of a description of land as contained in a deed is to identify the subject-matter of the grant. 8 R. C. L. 1074. The rule of construction as stated by Mr. Justice O'Neall in *Foy v. Neal,* 2 Strob. 156, is: 'That all the parts of a description contained in a deed should be taken together, and no part suffered to control absolutely the others.' " Parol evidence is admissible to elucidate latent ambiguities in written instruments generally. 9 S. C. Dig., Evidence, Key 452, p. 205. Application of the cited cases here does not impinge upon the authority of *Holly Hill Lumber Co. v. Grooms,* 198 S. C. 118, 16 S. E. (2d) 816, cited by defendant, which illustrates the general rule that a plat accompanying a conveyance controls and the jury were so instructed in this case.

It is well established that where the dividing line be- ▓ tween two co-terminous owners is doubtful and to establish it they meet together and agree on a line the agreed line must be regarded in all future controversies to be the true line. *Davis v. Elmore,* 40 S. C. 533, 19 S. E. 204; *Welch v. Carter,* 151 S. C. 145, 148 S. E. 697. These cases are cited in defendant's brief on appeal but are inapplicable because the evidence here tended to show that there was no such agreement. Instead it was agreed, in effect, as has been said, that the line which was run for the purpose of the 1943 plat was tentative and subject to adjustment between the adjoining owners. There was no error in the admission of this evidence. Atkinson was present representing the owners of the adjoining land, who conveyed it several years later to the defendant, and no reason appears why his agreement that the location should be tentative

should not bind his principals and their subsequent grantee, the defendant. The plaintiff, with his contract to purchase the adjoining land, was in the shoes of the owner. 11 C. J. S., Boundaries, § 66, Parties, p. 637.

What has been said above disposes of defendant's first four questions on appeal and adversely to him. His motions for directed verdict and judgment *non obstante* were properly overruled.

The fifth question alleges error in the admission of ██ the testimony of certain witnesses for plaintiff as to the location of the disputed corner between the lands of plaintiff and defendant. One of them was the surveyor who made the 1943 plat and also participated in the later joint survey and plat made under order of the court. He qualified as an expert and testified to the facts, within his knowledge, upon which he based his opinion which, we think, made it competent evidence upon the issue. "A surveyor * * * is a competent witness in actions concerning the boundary line and may testify as to lines, corners, or monuments. * * * However, surveyors may properly be questioned, as experts, on subjects with which they are peculiarly acquainted, and which cannot be made known to the jury except by such testimony, and so a surveyor, after stating facts on which his opinion is based, may give his opinion or conclusion as an expert." 11 C. J. S., Boundaries, § 107, pp. 701, 703. Generally on the admission of evidence of surveyors in boundary disputes see *Holden v. Cantrell,* 100 S. C. 265, 84 S. E. 826. Declarations of deceased surveyors who were cognizant of the facts are even admissible. *Ivester v. Fowler,* 109 S. C. 424, 96 N. E. 154; *Wheeler v. Wheeler,* 111 S. C. 87, 96 S. E. 714.

Some of the others of the witnesses referred to in ██ this question were former occupants of the Holliday land, now defendant's, and they testified to their knowledge of the existence and location of the witnesses to the disputed corner, to which we see no valid objection. One

of these witnesses also testified over objection that he had long ago cut poles in the disputed area thinking that it was land of Johnson, plaintiff's grantor; but he was cross-examined without reservation on the same subject, which renders exception thereto untenable. The same was true with respect to the testimony of some of the other of these witnesses.

Moreover, "the rule now generally established in the United States, however, is that evidence of common repute is admissible as to the location of a private as well as a public boundary line. Some difference of opinion may exist as to the application of this rule, but there can be none as to its legal force." 8 Am. Jur. 813, 814, Boundaries, sec. 95.

The plaintiff testified that he showed this old, marked corner to the defendant before the latter purchased his tract. Questions 6 and 7 may be considered together. They are concerned with the testimony of plaintiff's grantor, Johnson, who was called as a witness by the defendant; and with the admission in evidence on his cross-examination of a deed made by him to plaintiff after commencement of the action. The description in the deed which was dated March 25, 1952, follows:

"All and singular, all that tract or parcel of land in state and county aforesaid, in Dog Bluff township, containing 43.8 acres, more or less, and being bounded on the northwest by lands of Burroughs Johnson, Gilbert Johnson, Elizabeth Singleton and Sue Singleton, on the northeast by lands of Geo. J. Holliday estate and the run of Mill Branch, on the southeast by lands of Geo. J. Holliday estate and on the west or southwest by lands of Shafter Johnson.

"This is the same tract of land which was owned by Annie J. Johnson and then by W. J. Johnson at the time of their death and conveyed to the grantor by the other heirs of the said persons.

"It is the purpose of this conveyance to convey to Hazard Richardson such interest as I had, or may now have,

in the land known as the Annie J. Johnson lands. This is a quit-claim deed and not a warranty deed and is so intended."

Upon the admission in evidence of this deed the court instructed the jury as follows:

"The Court: Mr. Foreman and gentlemen of the jury, before I forget it with respect to this particular deed, Plaintiff's Exhibit 5, deed of W. T. Johnston to Hazard Richardson, dated March 25th, 1952, recorded in book 106, page 320, I charge you you will disregard that deed in determining the title to the property in dispute in this action, and you will consider that deed solely for the purpose of passing upon the testimony of the man who gave it, W. T. Johnson, the credibility of his testimony. You will have to weigh the testimony of all the witnesses who testified, and you will consider this deed solely for the purpose of passing upon the credibility of Mr. Johnson, and for no other purpose."

For two reasons we do not think that there was prejudicial error. First, the testimony of the witness-grantor was somewhat self-contradictory and this subsequent deed was relevant upon his credibility, for which limited purpose it was admitted; and, second, there was little, if any, difference in the deeds. Both contained in their descriptions the intention of the grantor to convey the Annie Johnson tract which, according to the weight of the evidence and to the verdict, included the disputed area. There was likewise, therefore, no prejudicial error in admitting in the cross-examination of this witness-grantor his testimony that such was his intention.

We have carefully considered the authorities cited by appellant to the point, *Young v. Peoples Bank,* 163 S. C. 57, 161 S. E. 324, and cases therein cited, and do not think that our conclusion is in conflict with them. They hold generally that a plaintiff can recover only upon the facts which existed at the time of the commencement of the action, which is of course sound; but here plaintiff recovered upon his deed of 1943, and if it was error to admit the subse-

quent deed of 1952 (for the limited purpose ruled by the court, *supra*), which we do not decide, no resulting prejudice to defendant appears.

Question eight imputes error in refusal by the court to instruct the jury that the deed to plaintiff of 1943 did not convey the land in controversy. For the reasons stated above in the discussion of the first four questions the instruction, which would have been tantamount to direction of verdict for defendant, would have been entirely improper.

A part of the instructions to the jury follows, to which question nine imputes error:

"Now, the first question that you have got to determine is what was originally the correct line between these parties, because the plaintiff is basing his claim upon the fact that, before he bought the property, the tract that he now owns and the tract the defendant owns, had already been divided and a line established, and he claims the original division lines between the tracts is the lower line on this official map, the map made by the surveyors appointed by the court for both parties, and not the upper line, excluding the disputed area. So that is the first proposition that the plaintiff must convince you of, because obviously, unless this lower line shown on this official map was in fact the true boundary line before plaintiff acquired it, he has no case, he would fail in his case. That is an essential element he must prove. If you should come to the conclusion, after weighing all of the evidence and considering all of the deeds, the descriptions, and you should come to the conclusion that this lower line on this plat was never the dividing line between these tracts, you need not go any further, because the plaintiff could not prevail in this action. If you find, after considering the evidence, that that was the line when this property was divided into two tracts, that this lower line was the true and correct line at one time, then the next question you are called upon to decide is: was it the intent of the parties to the deed under which plaintiff claims, the deed made by

W. T. Johnson to Hazard Richardson, the plaintiff in this case, was it the intent of that deed that the plaintiff would receive under that deed to the true line? Was it the intent that the plaintiff was to receive all of the land that the grantor owned in that particular tract?"

The evidence showed that the adjoining tracts of plaintiff and defendant had formerly belonged to a single owner who divided and conveyed them separately. It is fairly inferable from the evidence that this was the origin of the old, disputed corner which was identified in the testimony. We find no error in this portion of the charge in the light of the facts in evidence.

Question ten imputes error in the instruction to the jury that they might consider the extrinsic evidence which had been admitted in order to determine whether there was latent ambiguity in plaintiff's deed and to determine the intent of the parties thereto. This has been fully disposed of in the forepart of this opinion. Question eleven is of the same purport and has already been answered. The same is true with respect to question 12 which also relates to the court's charge to the jury.

Some of the questions last overruled complain of portions of the charge to the jury to which the defendant did not object at the conclusion of the charge when given opportunity to do so in accord with the terms of Act No. 27, Feb. 20, 1953, 48 St. at Large, p. 28. To that extent the questions are therefore not available on appeal. *Munn v. Asseff,* S. C., 83 S. E. (2d) 642; *Hall v. Walters,* S. C., 85 S. E. (2d) 729; *State v. Shea,* S. C., 85 S. E. (2d) 858.

Question 13, which is the last, has reference to an order which was rendered by the presiding judge after the adjournment of the term of court at which the case had been tried. It confirmed the verdict and enjoined the defendant from entering or trespassing upon the disputed area. The prayer of the complaint asked for that re-

lief and the court included the following in the instructions to the jury, to which there was no objection by counsel. (See again Act No. 27 of 1953, 48 St. at Large, p. 28) :

"Now, Mr. Foreman and gentlemen of the jury, the defendant in his answer sets up title to the property too, so the result of your verdict will' be in this case to give the land to either the plaintiff or defendant. The defendant has withdrawn his claim for damages, and I don't think there is any proof of any substantial damage on behalf of the plaintiff. * * * It is just a question of who gets the land.

"You will find one of two verdicts, depending upon how you decide the facts. If you find the plaintiff is entitled to the land, your verdict would be simply 'We find for the plaintiff'; that would mean the plaintiff would get the land in dispute, and I would pass an order to that effect. If you find the defendant is entitled to the land, you simply say: 'We find for the defendant,' and that likewise means the defendant would get the land, and I would pass an order to that effect."

Conceding, without deciding, that it was error to defer the order until after the adjournment of the term, we fail to see prejudice to defendant, now appellant. The verdict and judgment entered, or to be entered, thereon entitled plaintiff to the relief which the order expressly gave. In view of the absence of other reversible error the rendition of it does not constitute such. It seems to be so conceded in appellant's argument of the question, which concludes: "If this court now orders a verdict directed for the appellant or * * * a new trial, the order complained of will fall and become of no force and effect."

Affirmed.

BAKER, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.