THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Frances S. Smoak, as Personal Representative 
 of the Estate of Curtis P. Smoak, and Frances S. Smoak, individually,       
Appellant,
 
 
 

v.

 
 
 
Terry McCullough,       
Respondent.
 
 
 

Appeal From Aiken County
Robert A. Smoak, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-098
Heard November 4, 2003  Filed February 
 17, 2004

AFFIRMED IN PART, REVERSED IN PART, and
REMANDED 

 
 
 
Kirby D. Shealy, III, of Columbia, for Appellant.
Louis H. Lang, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Frances S. 
 Smoak brought this suit against an adjoining landowner, Terry McCullough, to 
 settle a boundary dispute.  The master-in-equity dismissed the suit, ruling 
 insufficient evidence existed within the record to determine Smoaks boundary.  
 Smoak appeals.  We affirm in part, reverse in part, and remand.
FACTUAL/PROCEDURAL BACKGROUND
Smoak and McCullough are adjoining landowners.  
 Smoak owns two tracts of land.  The first parcel, a one-hundred-acre tract, 
 lies to the west of the second tract, sharing a common boundary line.  The second 
 consists of approximately 2½ acres and lies to the east of the first tract and 
 to the west of McCulloughs property, sharing a common east/west boundary line 
 with McCulloughs property.  All three parcels can be traced to a common grantor, 
 Chester Hall, and Smoaks parcels pre-date the first conveyance of McCulloughs 
 tract to his predecessors in title. 
 [1]   
Smoaks 2½-acre parcel has the following description:

All that piece, parcel or lot of land, situate [sic], in 
 the County of Aiken, State of South Carolina, containing two and one-half (2 
 ½) acres, more or less, and adjoining lands, now or formerly, of Elizabeth Thornton, 
 on the West run of branch being the line, same commencing at run at pond dam 
 and extending forty (40) feet East from the swamp or edge of swamp bushes to 
 or within twenty (20.0) feet of spring and extending West to run of said branch 
 probably known as Starching Branch.

McCulloughs tract was established by the following 
 description:

All that certain piece, parcel or tract of land situated, 
 lying and being in [the] State of South Carolina, County of Aiken, containing 
 about two acres, more or less and bounded as follows to wit:  Bounded all the 
 way on the west by the Betty Thornton estate; bounded on the north, east and 
 partly on the south by a County Public Road.  This eastern and southern boundary 
 follows the said road going west until a point is reached about even with a 
 spring, then the said southern boundary cuts across and touches the spring on 
 the northern side then follows the run of the spring until the western boundary 
 of the Betty Thornton land is reached.  This makes the southern boundary of 
 the land herein conveyed, a public County road, a spring and the run or branch 
 which drains the spring.  The spring and spring branch are not conveyed by this 
 deed, but the right is hereby given and sold to Colie Hall, his heirs and assigns, 
 to have access and entry to the said spring and to use water from the same.

After a dispute arose about the proper boundary 
 between their properties, Smoak sued McCullough.  In her first cause of action, 
 Smoak alleged a dispute existed between the parties as to the location of the 
 east/west boundary separating their property, and there is confusion and uncertainty 
 as to the boundary line.  Smoak asked the court to settle the boundary dispute 
 and to quiet the title to her property. 
In her second cause of action, Smoak alleged she 
 is in actual possession of the disputed property, and McCullough trespassed 
 to access the pond.  In her third cause of action for trespass quare clausum 
 fregit, Smoak sought damages for an invasion of her possession of the property 
 by McCullough, alleging he cut and removed trees.  
McCullough admitted the chains of title and descriptions 
 but generally denied the material allegations of the complaint.    
At trial, Smoak presented the testimony of an expert 
 land surveyor.  In reviewing the deeds in question, Smoaks expert testified 
 he was unable to locate the eastern boundary of Smoaks tract because the swamp 
 bushes were no longer in existence.  
McCullough presented the testimony of his own expert 
 surveyor.  McCulloughs expert testified that he too was unable to locate the 
 eastern boundary of the 2½-acre track based on Smoaks and McCulloughs deeds 
 because the natural boundaries mentioned in both deeds no longer existed. 
McCullough also presented the testimony of M.C. Smith, 
 a former owner of his tract of land, who testified the purpose of conveying 
 the 2½-acre tract was to allow Smoaks predecessor in title to fill in the pond 
 and own to the edge of it. [2]   
The master ruled the evidence was insufficient to establish 
 a boundary between the two tracts.  Furthermore, the master ruled Smoak failed 
 to prove a trespass by McCullough, and for that reason, the court could not 
 provide any relief.  Therefore, the master dismissed the case in full. Smoak 
 appeals.
STANDARD OF REVIEW
[T]he character, as legal or equitable, of an 
 action is determined by the complaint in its main purpose, the nature of the 
 issues as raised by the pleadings or the pleadings and proof, and the character 
 of the relief sought under them. Clark v. Hargrave, 323 S.C. 84, 86, 
 473 S.E.2d 474, 476 (Ct. App. 1996); Ins. Fin. Servs., Inc. v. South Carolina 
 Ins. Co., 271 S.C. 289, 293, 247 S.E.2d 315, 318 (1978).  Furthermore, where 
 the plaintiffs complaint alleges some feature of equitable cognizance, such 
 as obliteration of the boundary line by the adjoining landowner, a cause of 
 action to settle a boundary dispute is in equity. Uxbridge Co. v. Poppenheim, 
 135 S.C. 26, 30, 133 S.E. 461, 461 (1926).   
Smoaks complaint asks the master to 
 establish the true boundary between the properties.  Smoak alleges the natural 
 boundaries are no longer ascertainable because McCullough obliterated the natural 
 markers.  Additionally, Smoak asks the master to enjoin future trespasses.
McCullough does not assert an issue of 
 title in his answer to the complaint or at trial.  Furthermore, the proof presented 
 by both parties at trial supports the conclusion the natural markers defining 
 the east/west border are no longer visible, and the true boundary cannot be 
 ascertained by direct reference to them.  Moreover, although McCullough denies 
 obliterating the natural markers, he does admit he has cut some of the foliage 
 and filled land using a backhoe.  
As we view the pleadings, the paramount question 
 to be decided is the placement of the boundary between the lands of the parties 
 based upon their existing property descriptions in an action to quiet title.  
 Thus, we view this as an action in equity.  See Bryan v. Bryan, 
 285 S.C. 434, 437, 330 S.E.2d 310, 312 (Ct. App. 1985) (holding an action to 
 quiet title is one in equity).  This conclusion is further supported by the 
 fact that Smoak claims McCullough obliterated the swamp grass and bushes, which 
 were the only markers for the boundary between their properties. See 
 Uxbridge Co. v. Poppenheim, 135 S.C. at 30, 133 S.E. at 461.  Consequently, 
 this Court may take its own view of the preponderance of the evidence.   Hayne 
 Fed. Credit Union v. Bailey, 327 S.C. 242, 247, 489 S.E.2d 472, 475 (1997) 
 (Our scope of review of a case heard by a master who enters a final judgment 
 is to determine facts in accordance with our own view of the preponderance of 
 the evidence.).
LAW/ANALYSIS
Smoak argues the master erred by concluding the 
 boundary line between the lands owned by the parties is impossible to determine.  
 We agree. [3] 
The paramount and cardinal rule of construction 
 of a deed is to ascertain the intention of the grantor as expressed by him in 
 the deed and then to give effect to that intention if it can be done without 
 violating an established rule of law.  Rhodes v. Black, 170 S.C. 193, 
 200, 170 S.E. 158, 159 (1933).  
In ascertaining a boundary, it has long been established 
 that the court resort[s], 1st, to natural boundaries, such as rocks, mountains, 
 rivers, and creeks; 2nd, to artificial marks, such as corner trees and stations; 
 3rd, to adjacent boundaries; 4th, course and distance; and 5th, the shape of 
 the plat. Wash v. Holmes, 19 S.C.L. (1 Hill) 12, 15 (Ct. App. 1833).  

Initially, we note, the only direct evidence of 
 the boundary line is the vegetation that no longer exists.  There are no artificial 
 marks noted by either side, and the adjacent boundary is not directly helpful 
 because it refers to Smoaks boundary as its western boundary.  However, we 
 conclude the key to the solution lies in reconciling the wording of the deed 
 descriptions with the evidence within the record.
Smoaks deed states the northern boundary of the 
 2½-acre tract is a pond dam, and the western boundary of the tract is a creek 
 branch.  The deed further states the tract is bordered on the east by swamp 
 bushes, presumably on the eastern side of the watercourse.  The deed creating 
 McCulloughs tract states the western boundary to his tract of land is the eastern 
 boundary of Smoaks tract of land.  The deed further grants the right to enter 
 and use the spring drained by the branch but clearly excludes the spring from 
 the deed. [4]   
Aerial photographs establish the pond came into 
 existence between 1951 and 1955.  Furthermore, M.C. Smith, a former owner of 
 McCulloughs tract, testified he was familiar with all of the boundaries of 
 the property, even before he owned it.  Additionally, he testified the purpose 
 of Smoaks deed description was to allow Smoaks predecessor to fill the pond 
 and to own to the edge of it. [5]   
We conclude the pond dam existed at the time the 
 2½-acre tract was conveyed to Smoaks predecessor in title, but the pond had 
 not yet been formed.  
When we view the other evidence within the record 
 in light of that conclusion, we hold the grantor intended to include all of 
 the land covered by the pond within the 2½-acre conveyance.  This explains why 
 the grantors referred in the same deed to the run of branch as the western 
 edge of the 2½-acre tract, a natural marker no longer ascertainable once the 
 pond filled.  See Ex Parte Keller, 189 S.C. 26, 36, 199 S.E. 909, 
 914 (1938) (holding all grants and conveyances are presumed to be made with 
 reference to an actual view of the premises by the parties).   Additionally, 
 it is consistent with Smiths testimony that the 2½-acre tract was conveyed 
 with an eastern boundary paralleling the swamp grass or bushes to give Smoaks 
 predecessor the entire pond once it was formed.  Finally, this is consistent 
 with the express language in the deed description creating McCulloughs tract 
 giving him use and access to the spring now lying under the pond but specifically 
 excluding ownership of it from his grant. [6] 
Thus, we conclude the evidence, in conjunction 
 with the language in the deeds, indicates the 2½-acre tract was conveyed with 
 an eastern boundary of the swamp bushes to ensure that when the creek flooded 
 and became a pond, an eventuality that was contemplated but clearly had not 
 yet occurred, the pond would be within the 2½-acre tract.  Therefore, we hold 
 the intent of the grantors was to grant Smoaks predecessor in title exclusive 
 ownership of the pond, while granting McCullough the land up to the edge of 
 the pond.  Consequently, the boundary between the properties should properly 
 be marked as the edge of the pond.  
Having concluded the eastern edge of the pond is 
 the intended boundary separating the lands of the parties, with the right to 
 access and use the water reserved to McCullough, we agree with the masters 
 conclusion that Smoak failed in her burden of proving trespass or trespass quare 
 clausum fregit. 
CONCLUSION
For the foregoing reasons, the denial of relief 
 based upon trespass and trespass quare clausum fregit is AFFIRMED, that 
 portion of the order of the master, dismissing this suit is REVERSED, 
 and this matter is REMANDED with instructions to the master to set the 
 disputed boundary dividing the lands of the parties along the eastern edge of 
 the pond in accordance with this opinion.  Should disagreement remain between 
 the parties as to the location of any part of the eastern edge of the pond or 
 of the disputed boundary itself after location of the pond edge, the master 
 is authorized to take all measures necessary to resolve the controversy, including 
 the taking of additional evidence or retention of a surveyor or other expert, 
 as needed, with the expense thereof to be borne by the parties in such amounts 
 as shall be determined by the master.
AFFIRMED IN PART, REVERSED IN PART, and 
REMANDED.
HEARN, C.J., HUFF, and HOWARD, JJ., concurring.

 
 [1] 
 Smoaks chain of title begins with Chester and Jerry Hall.  Chester and 
 Jerry Hall conveyed the property by deed to Elizabeth Thornton in 1953.  Subsequently, 
 in 1964, Thorntons heirs conveyed the property by deed to Arthur Keels.  
 Thereafter, in 1976, Smoak received her deed from Keels.  
 McCulloughs chain of title also begins with 
 Chester Hall, who granted the tract to Colie Hall almost eleven years after 
 the grant to Smoaks predecessor in 1964.  Colie Hall then conveyed the tract 
 to M.C. Smith in 1968.  M.C. Smith conveyed the tract to Janice K. Smith by 
 deed dated April 14, 1992, although the description of the tract changed to 
 refer to a plat prepared by C. Ashley Abel on March 27, 1992.  Janice K. Smith 
 conveyed the property to McCullough on August 18, 2000.  His deed makes reference 
 to a plat prepared by Arthur J. Weed on August 15, 2000.  

 
 
 [2] M.C. Smith is the nephew of Coley Hall.  Coley Hall was the son of 
 the common grantor, Jerry Hall.  Smiths wife was Elizabeth Thorntons granddaughter.  
 Elizabeth Thornton was the initial grantee in Smoaks chain and was the sister 
 of Jerry Hall.  Smith testified that he was familiar with all of the boundaries 
 of the property, even before he owned it.  According to Smith, he was raised 
 less than 300 yards from the property and owned it for twenty-three or twenty-four 
 years.  

 
 [3] 
 Although we agree the master erred by dismissing the suit for lack of 
 evidence, we do not agree with Smoaks proposed boundary.  Smoak contends 
 this Court should connect the northeastern and southeastern boundaries of 
 her property as determined by her expert surveyor, drawing a straight line 
 between them as the east/west boundary between the properties.  

 
 [4] 
 Generally, when a swamp or a stream is given in a deed as the boundary 
 of property, the parties will be presumed to have intended the middle of the 
 swamp or stream as the boundary.  Wheeler v. Wheeler, 111 S.C. 87, 
 94, 96 S.E. 714, 715 (1918).  However, where, as here, the deed specifically 
 excludes the watercourse, the presumption is rebutted.   See Wheeler, 
 111 S.C. at 94-95, 96 S.E. at 716 (It may be shown that the parties intended 
 the edge of the swamp rather than the stream as the boundary . . . . [I]t 
 may be done by other competent evidence appearing either upon the face of 
 the deed itself, or of the plat made at the time, and proof of the actual 
 location of a different boundary line on the ground, and possession taken 
 and held to the boundary so located.).

 
 [5] 
 See Richardson v. Register, 227 S.C. 81, 90, 87 S.E.2d 40, 
 44 (1955) (holding evidence of common repute is admissible as to the location 
 of a private as well as a public boundary line); see also Holden 
 v. Cantrell, 100 S.C. 265, 279, 84 S.E. 826, 829 (1915) (holding a boundary 
 may be established by reference to declarations of former owners of plaintiffs 
 land, made while they were in possession thereof, accompanying and explaining 
 acts of ownership and tending to show the character and extent of their possession).

 
 
 [6] The confusion in this case is due partly to the fact that the deed 
 creating McCulloughs tract, conveyed to his predecessor in title eleven years 
 after the 2½-acre tract was conveyed, does not mention the pond and refers 
 only to Smoaks predecessors eastern boundary as its western boundary.  The 
 problem is exacerbated by the reference to a spring that drains a branch now 
 forming a part of the pond.  The aerial photographs taken in 1955 show the 
 pond was in existence, and the line of the branch was no longer ascertainable.